LAW OFFICES
# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

EDWARD BENNETT
(202) 434-5000
ebennett@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)



December 14, 2016

**VIA FEDERAL EXPRESS**

The Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 11B
New York, New York 10007-1312

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/15/16

Re: *Patriarch Partners Agency Servs. LLC v. Zohar CDO 2003-1, Ltd. et al.*,
No. 16 Civ. 4488

Dear Judge Marrero:

I write on behalf of the non-party Portfolio Companies who are referenced in a December 12, 2016 letter to your Honor from the parties in the above-captioned matter. This letter is intended to provide additional context for the Portfolio Companies' ongoing efforts to enter into a confidentiality agreement for the provision of documents and information to the Zohar Funds via the Funds' collateral manager, Alvarez & Marsal Zohar Management LLC ("A&M").

In May 2016, counsel for the Portfolio Companies traveled to New York to meet with counsel for A&M to work out a protocol for the orderly sharing of documents and information between the Companies and A&M. At that meeting, counsel for the Companies agreed to provide documents and information, and ultimately to arrange site visits, once an appropriate confidentiality agreement was executed. During the ensuing weeks, counsel for the Companies and counsel for A&M exchanged a series of draft confidentiality agreements. On June 7, 2016, counsel for the Companies sent counsel another turn of the document they were negotiating. The Funds did not respond for more than five months. Instead, they engaged in self-help, circumventing the Companies' counsel and reaching out directly to the Companies (both to management and to lower-level employees). Repeated admonitions to communicate via counsel were ignored or rebuffed. In fact, on September 8, 2016, Elizabeth LaPuma of A&M called the CEO of a Portfolio Company, asked him if the Company was represented by Williams & Connolly, and encouraged him to hire a different law firm. The next day, September 9, 2016, an A&M employee appears to have eschewed his @alvarezeandmarsal email address and sought information from a Portfolio Company incognito, via an anonymous Gmail account. In another instance, the CEO of a Portfolio Company was confronted by the head of a chief competitor who

WILLIAMS & CONNOLLY LLP

The Honorable Victor Marrero
United States District Judge
December 14, 2016
Page 2

told him she had seen the Company's financial information and was interested in buying the Company.[1] Portfolio Company information was placed in a data room (without the Companies' knowledge or consent) in connection with an auction of the collateral of one of the Zohar Funds, and while entrants to the data room are required to sign a confidentiality agreement, such agreement notably provides indemnification in the event of breach for the seller, the Trustee and the liquidation agent, but not by for my clients, private companies in competitive markets. My clients' financial information has further found its way to members of the media. These events, and others, made it clear that the June 2016 draft confidentiality agreement did not include adequate protections for the Companies.

Counsel for A&M resurfaced in November 2016 and proposed adopting the June draft, provided that Lynn Tilton, the Manager/Director of all of the Companies, and CEO of many of them, not participate in any meetings between A&M and the Companies. My clients rejected such limitation and A&M eventually dropped such improper demand. On December 1, 2016, we responded and suggested adding a simple provision that would protect the Companies from any harm, such as loss of customers or contracts, which could result from A&M allowing a competitor or other third party to access Company information. *See* Ex. A. We were hopeful that we could—at long last—reach agreement, but counsel for A&M rejected the proposal out of hand, without proposing any edits. Nonetheless, as they have since May 2016, the Portfolio Companies stand ready and willing to provide A&M with information upon the execution of a mutually agreeable confidentiality agreement.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: *Edward J. Bennett* /AMB

Edward J. Bennett
725 Twelfth Street NW
Washington, DC 20005
Tel.: 202-434-5000

> The parties are directed to address the matter set forth above to Magistrate Judge James Cott, to whom this dispute has been referred for resolution, as well as for supervision of remaining pretrial proceedings, establishing case management schedules as necessary, and settlement.
>
> SO ORDERED.
>
> 12-15-16
> Date        VICTOR MARRERO, U.S.D.J.

---

[1] Confronted with these events during a hearing on December 12, 2016 in a matter pending in Delaware Chancery Court, counsel for the Funds could say only, "Information being given to a third party, yes, when you're selling a company, you talk to potential buyers." Transcript at 39:11-13, *Zohar II 2005-I, Ltd. v. FSAR Holdings, Inc.* (Del. Ch. Dec. 12, 2016) (No. 12946-VCS). Counsel for the Funds failed to mention that A&M has no right to sell any of the Companies at this time.

# Exhibit A

## AGREEMENT

1. Alvarez & Marsal Zohar Management, LLC ("AMZM"), the Collateral Manager of the Zohar Funds, has propounded requests to the Companies,[1] seeking to receive documents and information and to conduct site visits to certain Companies (the "Requests"). Counsel for the Companies are prepared to begin sharing documents and information ("Company Information") with AMZM and certain AMZM affiliates (defined below) in response to the Requests. This Agreement governs AMZM's and its Affiliates' use and dissemination of Company Information.

2. For purposes of this Agreement only, AMZM and any of its respective managers, directors, officers, members, employees, or professional advisors or agents shall be considered AMZM Affiliates. An AMZM Affiliate receiving Company Information from AMZM is a "Receiving Party" for purposes of this Agreement. Upon their mutual agreement, the parties may from time to time identify additional parties as AMZM Affiliates under this Agreement on an as-needed basis.

3. It is agreed that AMZM, and any Receiving Party, shall, and shall endeavor to cause its employees and agents that are provided with Company Information to, keep confidential Company Information obtained in connection with the Requests. It is further agreed that neither AMZM nor a Receiving Party shall disclose any Company Information to a non-Affiliate third party except (i) with the prior written consent of the source Company or Companies; (ii) as required by law, regulation, court order or the rules or regulations of any self-regulating organization, body, or official having jurisdiction over it; (iii) to its professional advisers; (iv) such information as shall have been publicly disclosed other than in violation of this Agreement; or (v) such information that was or is obtained by the Receiving Party from a third party on a lawful basis, provided that for the purposes of this clause (v) neither AMZM nor the Receiving Party knows of any breach by such source of any confidentiality obligations with respect thereto.

4. Prior to providing an Affiliate with Company Information, AMZM must cause the Affiliate to execute the attached Acknowledgement and Undertaking and provide a copy of the

---

[1] The companies that received Requests are 180s, Inc.; Acme International Enterprises, Inc.; Best Textiles Acquisition, LLC; Black Mountain Doors, LLC; CBA Group, LLC; Chase Street, Inc.; Croscill Home, LLC; Cypress Copper, LLC; Dana-Classic Fragrances, Inc.; Denali Inc.; Dura Operating, LLC (et al.); Duro Textiles, LLC; East Alliance Limited; eMag Solutions, LLC; Fetco Home Décor, Inc.; Galey & Lord, LLC; Glenoit, LLC; Global Automotive Systems, LLC (et al.); Gorham Paper and Tissue, LLC; Hartwell Industries, Inc.; IMG Holdings, Inc.; Intrepid USA, Inc.; Intera Group, Inc.; Jewel of Jane, LLC; Libertas Copper, LLC; LVD Acquisition, LLC; MD Helicopters, Inc.; Mobile Armored Vehicles, LLC; Natura Water, Inc.; NetVersant Solutions, Inc.; Performance Designed Products, LLC; Petry Television, Inc.; RM (Rand McNally) Acquisition, LLC; Remco Maintenance, LLC; SO (Scan Optics) Acquisition, LLC; Snelling Employment Solutions, LLC; Snelling Employment, LLC; Snelling Medical Staffing, LLC; Snelling Services, LLC; Snelling Staffing, LLC; Spiegel, LLC; Stila Styles, LLC; Swift Textiles, LLC; UI Acquisition Holding Co.; Vulcan Engineering Co.; White Mountain Tissue, LLC; Xpient Solutions, LLC (each a "Company," collectively, the "Companies").

executed Acknowledgement and Undertaking to Williams & Connolly at the address below. For persons who are Affiliates by virtue of their employment with an entity Affiliate, it will be sufficient for their employing entity to execute the Acknowledgement and Undertaking. If a Receiving Party is subject to a pre-existing agreement or order relating to the confidential treatment of Company Information, this Agreement does not disturb the scope or effectiveness of that agreement or order.

5. It is further agreed that AMZM and any Receiving Parties may use Company Information received in relation to the requests only for the purpose of assisting AMZM in the performance of its duties as Collateral Manager to the Zohar Funds.

6. AMZM hereby agrees to indemnify, defend and hold harmless the Companies or each of their or their affiliates' directors, officers, employees, advisors, and counsel (each an "Indemnified Party"), from and against any damages, losses, costs, liabilities and expenses (including, without limitation, attorneys' fees and the cost of enforcing this indemnity) suffered by the Indemnified Party arising out of or resulting from any unauthorized use or disclosure of Company Information by AMZM or any AMZM Affiliate or otherwise as a result of a breach of this by AMZM or any AMZM Affiliate.

7. Notwithstanding the foregoing, AMZM or a Receiving Party (each a "Disclosing Party") may, without liability, make any disclosure that is required pursuant to subpoena or court process or required by law. Prior to making any such disclosure, a Disclosing Party shall, except as required by law, provide to the source Company or Companies written advance notice of such disclosure so that the source Company or Companies may seek a protective order or other appropriate remedy or waive compliance with this Agreement. Disclosing Parties shall reasonably cooperate with counsel for the Companies in obtaining such protective order or other remedy. In the event that such protective order or other remedy is not obtained, or if the source Company or Companies waive compliance with the provisions of this Agreement in writing, Disclosing Parties shall provide such Company Information only as required by law (as advised by its legal counsel), and will seek assurance that confidential treatment will be accorded to such Company Information.

AGREED this 2nd of December, 2016.

ALVAREZ & MARSAL ZOHAR MANAGEMENT, LLC

2

WILLIAMS & CONNOLLY, LLP


_____

Edward J. Bennett
Williams & Connolly, LLP
725 12th Street N.W.
Washington, DC  20005
ebennett@wc.com
202.434.5083

## ACKNOWLEDGEMENT AND UNDERTAKING TO ABIDE BY CONFIDENTIALITY AGREEMENT

I, _____, certify that:

1. My current employer is _____.
2. My current occupation is _____.
3. My current address is _____
   _____
   _____
   _____

4. I have received a copy of the Confidentiality Agreement dated June 6, 2016 (the "Agreement"). I have carefully read and understand the provisions of the Agreement.
5. I agree to be bound by the terms of the Agreement and agree to use Company Information only for the purpose of assisting AMZM in the performance of its duties as Collateral Manager to the Zohar Funds.
6. I understand that if I am bound by a pre-existing agreement or order relating to the confidential treatment of Company Information, this Agreement does not disturb the scope or effectiveness of that agreement or order.
7. I make this certificate this ____ day of _____, 201__.

Signed: _____

4