December 12, 2016

**BY FAX**
The Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 11B
New York, New York 10007-1312



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/15/16

Re: *Patriarch Partners Agency Servs., LLC v. Zohar CDO 2003-1, Ltd. et al.*, No. 16 Civ. 4488

Dear Judge Marrero:

We write on behalf of the parties in the above-captioned matter. Pursuant to the Court's directive arising out of the November 28, 2016 telephonic conference, we submit this joint letter updating the Court on our negotiations following the conference. Unfortunately, we were not able to reach agreement on a framework for Defendants to gain access to materials and personnel at certain Portfolio Companies (the "Portfolio Company Information"). Accordingly, the parties each separately set out their positions below.

### Defendants The Zohar Funds' and AMZM's Position

This dispute concerns a faithless agent, PPAS. PPAS initiated this action challenging the revocation of its agency by the Zohar Funds, claiming that agency is irrevocable. Yet, all the while, PPAS has refused to actually fulfill its obligations as the Zohar Funds' agent. Since the inception of this litigation, it has repeatedly failed to represent the Zohar Funds as it is obligated to do, and indeed has betrayed the Zohar Funds' interests by, among other things, accepting substantial payments in settlement of Portfolio Company obligations that it refuses to turn over to the Zohar Funds and failing to report to the Zohar Funds that several of the Zohar Funds' Portfolio Companies have defaulted, moved, and/or closed down. Now, in response to the Defendants' request to bring a motion for a preliminary injunction, PPAS has told the Court that it is powerless to assist the Zohar Funds in getting the documents and information they seek, and that the Zohar Funds' true dispute here is with the Portfolio Companies. Yet, PPAS is contractually entitled to the documents and information being sought[1] and, if acting faithfully in its capacity as agent, would provide these documents to the Zohar Funds regularly as part of the ordinary course of its agency. Even more egregious, PPAS is owned and controlled by the very same person who owns and controls the Portfolio Companies (although that ownership is currently in dispute and the subject of separate litigation). By feigning impotence in the current dispute, PPAS and Ms. Tilton are thus engaging in a shell game that requires Court intervention in order to get the Zohar Funds information that they urgently need.

---

[1] *See, e.g.*, White Mountain Tissue, LLC Credit Agreement, § 5.1(a) (providing that "The Borrower shall furnish to the Administrative Agent and the Lenders" nine separate categories of financial information on a regular basis).

Defendants initially wrote to the Court on November 1, 2016 seeking a pre-motion conference and permission to file a motion for a preliminary injunction. As explained in that letter and during the telephonic conference, Defendants felt such a motion had unfortunately become urgently necessary because the Zohar Fund Portfolio Companies had taken the position that "[w]hile this case is pending, we believe PPAS remains the Administrative Agent of the Zohar Funds and [the Portfolio Companies] will continue to conduct their businesses accordingly, unless the court directs otherwise." Moreover, PPAS was continuing to act as a faithless agent to the Zohar Funds (much as it had leading up to the Zohar Funds' decision to terminate PPAS as its agent), so that both PPAS and the Portfolio Companies were refusing to provide the Zohar Funds with documents and information they were contractually entitled to.

Defendants have pursued every avenue to obtain the documents and information it sought without the need for the Court's intervention. Previously, however, the Defendants' efforts to obtain the documents to which they are entitled from the Portfolio Companies were met with a demand that the Defendants enter into a confidentiality agreement as a condition to obtaining information. The Defendants had been unwilling to do so both because they are contractually entitled to the information without such restrictions, and being subject to confidentiality restrictions could cause problems in the performance of their duties (for example, to make required disclosures to the Zohar Funds' noteholders). Nonetheless, on November 11, 2016, we wrote to Williams & Connelly, counsel for the Portfolio Companies, offering to enter into the exact same confidentiality agreement they had previously proposed in hopes of making some progress toward a consensual resolution. Unfortunately but not surprisingly, it quickly became clear that the demand for a confidentiality agreement had simply been the fig leaf justification for their refusal to cooperate with the Zohar Funds in any way. Initially, the Portfolio Companies wrote back objecting to certain conditions the Zohar Funds had placed on their requests. When the Zohar Funds agreed to modify those conditions, the Portfolio Companies then resorted to making false and baseless accusations—devoid of any details that could possibly substantiate them—that AMZM had revealed Portfolio Company information to their competitors and revised their demand to now include that the Zohar Funds and AMZM *indemnify* the Portfolio Companies, and "each of their or their affiliates' directors, officers, employees, advisors, and counsel," as a condition to any information being shared.

Following the November 28 telephonic conference, at which the Court suggested that the parties should be able to reach an "agreed-upon framework for defendants to obtain information from portfolio companies" while this action is pending, we attempted again. On December 1, 2016, we wrote jointly to the Portfolio Companies and PPAS, specifying the documents and meetings that the Zohar Funds are seeking through the "agreed-upon framework," and requesting that the parties meet and confer. But this request, and the Court's directive, were met with nothing but a restatement of existing positions by both the Portfolio Companies and PPAS.

*First*, the Portfolio Companies have continued to insist that any turnover of information—including information they are already contractually obligated to have produced without restriction—be conditioned on an indemnification and confidentiality agreement. As they understand (and undoubtedly intend), the requested indemnification is a non-starter because, among other reasons, it would extend to Lynn Tilton as a "director" of each of the Portfolio Companies. But, as described above, Ms. Tilton is also the owner of PPAS and each of the other Patriarch-related entities with which the Defendants have already engaged in protracted court disputes. The Portfolio Companies are thus, in effect, demanding that the Defendants indemnify

2

their litigation adversary as a condition for obtaining information they are contractually entitled to during the pendency of this dispute.[2] Of course, that is not something Defendants are willing to do.

*Second*, PPAS took essentially no action in response to the Court's directive. In reply to the December 1 letter, counsel for PPAS responded by stating that any requests for information "should be directed to counsel for the portfolio companies."[3] When Defendants insisted on a meet and confer, pointing out that PPAS was presumptively in possession of the documents that Defendants were seeking, and asking whether PPAS would make them available to Defendants directly, PPAS stated that it did not know and further made no commitment to even find out.

PPAS's response to the Court's directive is indeed precisely the reason that Defendants requested the opportunity to seek a preliminary injunction in the first place, and Defendants hereby renew their request to make such a motion, on the legal grounds set out more fully in the December 1 letter. As the Court has previously recognized, the motion would turn on straightforward questions of agency law.[4] While Defendants would certainly be willing to narrowly tailor the injunctive relief they seek pursuant to the Court's guidance, it is more clear now than ever that PPAS is a faithless agent that is unwilling to carry out its contractual obligations to the Zohar Funds. PPAS has contractual entitlement to all of the information that the Zohar Funds are seeking, and contractual and agency obligations running to the Zohar Funds. It is simply refusing to fulfill those obligations, apparently believing that this litigation gives it permission not only to challenge AMZM's ability to act as the Zohar Funds' agent, but to cease acting as the Zohar Funds' agent themselves. By trying to have it both ways, they have left the Zohar Funds in an untenable position that necessitates urgent injunctive relief.

### Plaintiff PPAS's Position

---

[2] While Williams & Connolly has contended that such an indemnification should be of little consequence to the Defendants if they intend to comply with the confidentiality restrictions, that is hardly the case. The Defendants have been the subject of a steady torrent of false accusations made by Ms. Tilton (or at her direction), including the recent claim that AMZM breached confidentiality obligations by sharing Portfolio Company information with a competitor. The Defendants will not invite further mischief by empowering Ms. Tilton to now cloak further misguided conspiracy theories in the form of a indemnification claim.

[3] Defendants also note that, since both firms are taking directions from the very same person, Ms. Tilton, PPAS's suggestion is extremely disingenuous.

[4] It is particularly rich for Plaintiffs to contend that Defendants have somehow been dilatory in filing counterclaims in this action. As discussed at the preliminary conference, the Plaintiffs' affiliates were found by the Delaware Chancery Court to be in breach of their obligations to turn over to the Defendants the Zohar Funds' historical books and records (which are separate and apart from the current financial information sought here). The period for the Defendants to file counterclaims in this action was extended to January to allow for consideration of the documents that were wrongfully withheld. To date, the Plaintiffs' affiliates have yet to comply with the Delaware court's order to turn over the required documents. In any event, Defendants will shortly file counterclaims.

3

Six weeks ago, Defendants' launched a specious scheme to enlist the Court in advancing Defendants' agenda beyond this litigation by seeking a preliminary injunction purportedly barring PPAS from continuing in its role as the *irrevocably appointed and authorized* Administrative Agent under credit agreements among PPAS, the Defendant Zohar Funds, and various non-party Portfolio Companies. Defendants, of course, are not entitled to such relief. In addition to their obvious lack of standing here, the order sought by Defendants plainly would frustrate the fundamental aim of a preliminary injunction – namely, preservation of the status . 24 To be clear, in any event, PPAS is not a "faithless agent" as Defendants baldly proclaim in this submission. To the contrary, PPAS has continued in good faith to serve in its contractually defined capacity while it seeks to remedy *Defendants'* breaches and tortious interference through *the only claims pending before the Court.*

During the November 28 conference, the Court confirmed the misguided nature of Defendants' request, and Defendants' counsel shifted gears by asking the Court instead to facilitate Defendants' access to Portfolio Company Information. PPAS' counsel confirmed to the Court that PPAS in no way would hinder Defendants' ability to obtain such Information, but cautioned that the present dispute over access ultimately turned on contractual and confidentiality issues between Defendants and the non-party Portfolio Companies – *issues simply not before the Court in this litigation.*

Following a series of letters and meet-and-confer discussions over the last two weeks, PPAS understands that the Portfolio Companies stand ready to provide to Defendants all Portfolio Company Information to which they are contractually entitled upon execution of a mutually acceptable confidentiality agreement. Defendants, however, apparently rejected a standard indemnification provision designed to protect the Portfolio Companies from Defendants' unauthorized use or disclosure of such Information. We understand that counsel for the Portfolio Companies has requested this narrowly tailored provision based on the fact that sensitive proprietary information from the Portfolio Companies previously produced to Defendant Alvarez & Marsal has found its way to competitors and the media. PPAS provides this information so the Court can appreciate the fuller context of the impasse between Defendants and the Portfolio Companies, and PPAS takes no position with respect to the content of any proposed confidentiality agreement.

Setting aside whether Defendants are entitled—*in any forum*—to satisfaction of their ever-shifting demands, one thing undoubtedly is clear at this point: the Court should reject Defendants' gambit to entangle the Court in a disagreement that has nothing to do with the pending claims in this action. It bears repeating that *the only actual claims before Your Honor concern Defendants' wrongdoing.* Indeed, PPAS initiated this case almost six months ago, and Defendants still have failed to assert any counterclaims against PPAS. As this submission reveals, Defendants apparently prefer to launch unsubstantiated invectives against PPAS about purported contractual breaches via letter to the Court. In short, Defendants are attempting to leverage the Court to get their hands on materials from non-parties—through PPAS—without having to bother with any of the procedural protections and requirements associated with actually asserting a colorable claim for relief.

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By: /s/ Ellison Merkel /JEP/

Jonathan E. Pickhardt
Ellison Ward Merkel
Blair Adams
51 Madison Avenue, 22nd Floor
New York, New York, 10010
Tel.: 212-849-7000

*Attorneys for Zohar CDO 2003-I, Ltd., Zohar CDO 2003-I, LLC, Zohar II 2005-I, Ltd., Zohar II 2005-I, LLC, Zohar III, Ltd., Zohar III, LLC and Alvarez & Marsal Zohar Management, LLC*

GIBSON DUNN & CRUTCHER LLP

By: /s/ Mark A. Kirsch /JLK/

Randy M. Masto
Mark A. Kirsch
200 Park Avenue
New York, New York 10016
Tel.: 212-351-4000

*Attorneys for Patriarch Partners Agency Services*

---

The parties are directed to address the matter set forth above to Magistrate Judge James Cott, to whom this dispute has been referred for resolution, as well as for supervision of remaining pretrial proceedings, establishing case management schedules as necessary, and settlement.

SO ORDERED.

12-15-16
Date

VICTOR MARRERO, U.S.D.J.

5