UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

PATRIARCH PARTNERS AGENCY
SERVICES, LLC

                  Plaintiff-Counterclaim-
                  Defendant,

      - v. -

ZOHAR CDO 2003-1, LTD., ZOHAR II
2005-1, LTD., and ZOHAR III, LTD.,

                  Defendants-
                  Counterclaim-
                  Plaintiffs,

      - and -

ZOHAR CDO 2003-1, LLC, ZOHAR II
2005-1, LLC, ZOHAR III, LLC, ALVAREZ
& MARSAL ZOHAR MANAGEMENT,
LLC, and ALVAREZ & MARSAL ZOHAR
AGENCY SERVICES, LLC,

                  Defendants

-------------------------------------------------------- X

: 16 Civ. 4488 (VM)(KHP)

 

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO THE
NON-PARTY PORTFOLIO COMPANIES' MOTION TO QUASH THE SUBPOENAS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................................1

ARGUMENT ..........................................................................................................3

I.      THE SUBPOENAS SEEK RELEVANT INFORMATION ..............................3

II.     THE PORTFOLIO COMPANIES FAIL TO SHOW THAT THE SUBPOENAS
        ARE CUMULATIVE ..............................................................................8

III.    THE PORTFOLIO COMPANIES FAIL TO SHOW THAT THE SUBPOENAS
        ARE OVERBROAD OR UNDULY BURDENSOME.....................................11

IV.     IF NECESSARY, THE SUBPOENAS SHOULD BE MODIFIED RATHER
        THAN QUASHED ................................................................................14

V.      THE PORTFOLIO COMPANIES' CONFIDENTIALITY ARGUMENTS
        SHOULD BE REJECTED.......................................................................15

CONCLUSION......................................................................................................17

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allison v. Clos-ette Too, L.L.C.*,
 No. 14 Civ. 1618 (LAK)(JCF), 2015 WL 136102 (S.D.N.Y. Jan. 9, 2015) ........................... 3

*Anwar v. Fairfield Greenwich Ltd.*,
 297 F.R.D. 223 (S.D.N.Y. 2013) ........................................................................................ 10

*Brown v. City of Syracuse*,
 648 F. Supp. 2d 461 (N.D.N.Y. 2009) ................................................................................ 10

*Cohen v. City of N.Y.*,
 255 F.R.D. 110 (S.D.N.Y. 2008) ........................................................................................ 14

*Composition Roofers Union Local 30 Welfare Trust Fund v. Gravely Roofing Enters.,
 Inc.*, 160 F.R.D. 70 (E.D. Pa. 1995) ..................................................................................... 9

*Corbett v. eHome Credit Corp.*,
 No. 10 Civ. 26 (JG)(RLM), 2010 WL 3023870 (E.D.N.Y. Aug. 2, 2010) ............................. 7

*Dial Corp. v. News Corp.*,
 No. 13 Civ. 6802 (WHP), 2015 WL 3778533 (S.D.N.Y. May 19, 2015) .............................. 3

*In re Ex Parte Application of Kleimar N.V.*,
 220 F. Supp. 3d 517 (S.D.N.Y. 2016) ................................................................................. 12

*Fears v. Wilhelmina Model Agency, Inc.*,
 No. 02 Civ. 4911 (HB)(HBP), 2004 WL 719185 (S.D.N.Y. Apr. 1, 2004) .......................... 9

*Flanagan v. Wyndham Int'l, Inc.*,
 231 F.R.D. 98 (D.D.C. 2005) .............................................................................................. 14

*Grigsby & Assocs., Inc. v. Rice Derivative Holdings, L.P.*,
 No. 00 Civ. 5056 (RO), 2001 WL 1135620 (S.D.N.Y. Sept. 26, 2001) .............................. 14

*Haber v. ASN 50th St., LLC*,
 272 F.R.D. 377 (S.D.N.Y. 2011) .......................................................................................... 7

*Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*,
 333 F.3d 38 (1st Cir. 2003) ................................................................................................. 14

*Henry v. Morgan's Hotel Grp., Inc.*,
 No. 15 Civ. 1789 (ER)(JLC), 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016) ......................... 13

*In re Honeywell Int'l, Inc. Sec. Litig.*,
    230 F.R.D. 293 (S.D.N.Y. 2003) ........................................................................... 9

*Jones v. Hirschfeld*,
    219 F.R.D. 71 (S.D.N.Y. 2003) ........................................................................... 10

*Kenyon v. Simon & Schuster, Inc.*,
    No. 16 MISC. 327 (P1), 2016 WL 5930265 (S.D.N.Y. Oct. 11, 2016) ........................ 3, 8, 13

*Koch v. Greenberg*,
    No. 07 Civ 9600 (BSJ)(DF), 2009 WL 2143634 (S.D.N.Y. July 14, 2009) ........................ 10

*Night Hawk Ltd. v. Briarpatch Ltd.*,
    No. 03 Civ. 1382 (RWS), 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ........................ 10

*Peskoff v. Faber*,
    No. 04 Civ. 526 (HHK)(JMF), 2006 WL 1933483 (D.D.C. July 11, 2006)........................ 13

*Probulk Carriers Ltd. v. Marvel Int'l Mgmt. and Transp.*,
    180 F. Supp. 3d 290 (S.D.N.Y. 2016)................................................................... 14

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,
    No. 13 Civ. 1654 (RA)(HBP), 2014 WL 5420225 (S.D.N.Y. Oct. 24, 2014).................... 3, 4

*Sagebrush Sols., LLC v. Health Mgmt. Sys., Inc.*,
    289 F.R.D. 251 (S.D. Ohio 2013)....................................................................... 10

*Schwartz v. N.Y. City Off-Track Betting Corp.*,
    No. 92 Civ. 1166 (KMW), 1993 WL 42760 (S.D.N.Y. Feb. 11, 1993) ............................ 13

*Sherrill v. DIO Transp., Inc.*,
    317 F.R.D. 609 (D.S.C. 2016) ....................................................................... 10, 11

*Simmons v. Morgan Stanley Smith Barney, LLC*,
    No. 11 Civ. 2889 (WQH)(MDD), 2013 WL 310330 (S.D. Cal. Jan. 25, 2013).................... 4

*Sky Med. Supply Inc. v. SCS Support Claim Serv., Inc.*,
    No. 12 Civ. 6383 (JFB)(AKT), 2016 WL 4703656 (E.D.N.Y. Sept. 7, 2016)...................... 4

*Software Rights Archive, LLC v. Google, Inc.*,
    No. 07 Civ. 511 (JJF), 2009 WL 1438249 (D. Del. 2009) .......................................... 10, 13

*Solomon v. Nassau Cnty.*,
    274 F.R.D. 455 (E.D.N.Y. 2011) ....................................................................... 10

*State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*,
    No. 07 Civ. 51 (EVN)(MDG), 2007 WL 2993840 (E.D.N.Y. Oct. 10, 2007) ...................... 9

*State Farm Mut. Auto. Ins. Co. v. Fayda*,
    No. 14 Civ. 9792 (WHP), 2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015) ................................. 4

*Stokes v. Xerox Corp.*,
    No. 05 Civ. 71683 (DT), 2006 WL 6686584 (E.D. Mich. Oct. 5, 2006) ............................ 10

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    No. 08 Civ. 80129 (SI), 2008 WL 3876142 (N.D. Cal. Aug. 18, 2008)................................ 9

*Wells v. Lamplight Farms, Inc.*,
    298 F.R.D. 428 (N.D. Iowa 2014) .................................................................................... 10

## **Rules and Regulations**

Fed. R. Civ. P. 26.......................................................................................................................... 3

Fed. R. Civ. P. 26(b)(1)................................................................................................................. 4

Fed. R. Civ. P. 26(b)(2)(C) .......................................................................................................... 4

Fed. R. Civ. P. 26(b)(2)(C)(i) ...................................................................................................... 9

Fed. R. Civ. P. 45(d)(3)............................................................................................................... 14

Defendants Zohar CDO 2003-1, Ltd., Zohar II 2005-1, Ltd., and Zohar III, Ltd. (collectively the "Zohar Funds") respectfully submit this memorandum of law in opposition to the Non-Party Portfolio Companies' motion to quash the Zohar Funds' subpoenas.

## PRELIMINARY STATEMENT

Information in the Portfolio Companies' possession is central to this lawsuit. The claims and defenses in this case involve breaches by Patriarch Partners Agency Services, LLC ("PPAS") in administering various Credit Agreements under which the Zohar Funds are lenders. These breaches include PPAS's failure to turn over documents to the Zohar Funds as required by the contracts, its refusal to relinquish its appointment as Administrative Agent despite its valid termination in that role, and its unauthorized (and often unwritten) amendment of the Credit Agreements reducing interest rates and waiving accrued interest payment obligations.

The borrowers to these Credit Agreements—and thus the parties that negotiated the documents and amendments and the beneficiaries of the unauthorized modifications—are the Portfolio Companies. There is thus little question that the Portfolio Companies have information regarding the interpretation of relevant provisions of the Credit Agreements, the nature of the unwritten modifications that were made to them, and where the Zohar Funds currently stand in the debt structure, among other things. Rather than pursue discovery against all borrowers to the relevant Credit Agreements, of which there are more than 40, the Zohar Funds served Subpoenas on a more limited set, specifically the 11 Portfolio Companies that PPAS's owner, Lynn Tilton, had identified as the most valuable. These Subpoenas should be enforced.

First, the Subpoenas are unquestionably relevant. They seek information relating to the Portfolio Companies' understanding of relevant provisions in the Credit Agreements, to amendments that were made to these agreements, and to defaults by the Portfolio Companies that were waived. Each of these topics, and others, in the Subpoenas is tied to a claim or defense of either PPAS or the

Zohar Funds.  Indeed, the Portfolio Companies do not seriously dispute the relevance of the Subpoenas other than to claim that they are irrelevant to the extent they seek the Portfolio Companies' communications with all Patriarch entities and not just PPAS.  But the Subpoenas seek more than just communications with Patriarch or PPAS, and, in any event, the Portfolio Companies' argument that communications with Patriarch entities are irrelevant is wrong because the issues in this case concern what was communicated not merely with whom the communications occurred.

Second, the Portfolio Companies do not come close to satisfying their burden of showing that the Subpoenas are cumulative, overbroad, or unduly burdensome.  The Portfolio Companies' cumulative argument is based on its misleading assertion that the Subpoenas seek information in PPAS's possession and that there are only a few topics of discovery for which it is "conceivable" that the Portfolio Companies are the "sole source" of information.  This assertion is misleading because, in addition to external communications, the Subpoenas also seek the Portfolio Companies' internal documents.  These documents may be the only source of information of amendments that were made orally or through course of performance, for example, and they cannot be obtained from PPAS.  The Portfolio Companies also provide no support for their argument that the Subpoenas are unduly burdensome other than to summarily assert that they are.  As to breadth, the Portfolio Companies again play fast and loose, contending, for instance, that several topics in the Subpoenas are not limited in time, when in fact the scope of those topics is necessarily limited by their subject matter (*i.e.*, a request regarding the negotiation of a Credit Agreement is inherently limited to the time period of those negotiations).

Because the requested information is relevant to the claims and defenses in this lawsuit, and because the Portfolio Companies cannot justify limiting discovery, the Portfolio Companies' motion to quash should be denied.

## ARGUMENT

The decision to quash or modify a subpoena is within the Court's discretion. *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 Civ. 1654 (RA)(HBP), 2014 WL 5420225, at *6 (S.D.N.Y. Oct. 24, 2014).

On a motion to quash, the burden of proof rests first on the party seeking discovery (here, the Zohar Funds) to demonstrate the relevance of the requested information. *See Dial Corp. v. News Corp.*, No. 13 Civ. 6802 (WHP), 2015 WL 3778533, at *1 (S.D.N.Y. May 19, 2015) ("the subpoenaing party must demonstrate that the documents sought are relevant and material to the allegations and claims at issue in the proceedings…") (omitting citation and internal quotation marks).  "Once relevance has been shown, it is up to the responding party [here, the Portfolio Companies] to justify curtailing discovery." *Allison v. Clos-ette Too, L.L.C.*, No. 14 Civ. 1618 (LAK)(JCF), 2015 WL 136102, at *7-8 (S.D.N.Y. Jan. 9, 2015) (omitting citation and internal quotation marks).  In that respect, "general and conclusory objections as to relevance, overbreadth, or burden are insufficient" to support a motion to quash. *Refco*, 2014 WL 5420225, at *6 (omitting citation and internal quotation marks).

Under these standards, the Portfolio Companies' motion to quash should be denied.

## I.  THE SUBPOENAS SEEK RELEVANT INFORMATION

For purposes of discovery, the scope of relevance for nonparties is the same as for parties. *Kenyon v. Simon & Schuster, Inc.*, No. 16 MISC. 327 (P1), 2016 WL 5930265, at *5 (S.D.N.Y. Oct. 11, 2016) ("The scope of discovery does not change based on party status.").  That scope is defined in Federal Rule of Civil Procedure 26, which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Under the Rule, "[t]here is no requirement that the information sought directly relate to a particular issue in the case." *Simmons v. Morgan Stanley Smith Barney, LLC*, No. 11 Civ. 2889 (WQH)(MDD), 2013 WL 310330, at *1 (S.D. Cal. Jan. 25, 2013) (relied on by the Portfolio Companies) (denying motion to quash). Rather, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792 (WHP), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (omitting citation and internal quotation marks), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016). This standard is also "broader in scope than relevance for the purpose of the trial itself." *Refco*, 2014 WL 5420225, at *7 (omitting citation and internal quotation marks).[1]

The Subpoenas exceed this low threshold. As an initial matter, the 11 subpoenaed Portfolio Companies are appropriate targets for discovery. This case generally concerns PPAS's failure to satisfy its obligations under various Credit Agreements, including the delivery of critical information required under the documents; the unauthorized amendment and modification of those Credit Agreements to the detriment of the Zohar Funds; and PPAS's replacement as Administrative Agent in the deals. As the borrowers, the Portfolio Companies are essential parties to these Credit Agreements and were the beneficiaries of PPAS's unauthorized modifications. The Portfolio Companies thus have information regarding the intent, negotiations, and discussions as to the operation of relevant terms in the Credit Agreements, the amendments that were executed, and the

---

[1] Although Rule 26 was amended in late 2015 to remove the familiar "reasonably calculated to lead to the discovery of admissible evidence" language and include "proportionality" language, the overall threshold of relevance was not fundamentally altered, and the amendment was "not a substantive change in the law," because proportionality had always been recognized in the prior version of Rule 26(b)(2)(C). *Sky Med. Supply Inc. v. SCS Support Claim Serv., Inc.*, No. 12 Civ. 6383 (JFB)(AKT), 2016 WL 4703656, at *2 (E.D.N.Y. Sept. 7, 2016).

effect of these modifications to the Zohar Funds.  Indeed, the Court previously recognized the importance of the Portfolio Companies to discovery in this case.  *See* Jan. 13, 2017 Tr. 14 ("Why isn't the proper vehicle for this dispute then a subpoena on the third parties …").

Moreover, each of the 15 categories of requested information in the Subpoenas is tied to the claims brought by PPAS against the Zohar Funds or the counterclaims brought by the Zohar Funds against PPAS.[2]  In particular, the Subpoenas seek information related to:

- PPAS's allegations of breach of contract and tortious interference with contract.  *See* Request Nos. 1 and 2 (the contractual parties' understanding and execution of disputed contract terms), 4 (AMZAS's appointment as Administrative Agent), 5 (discussions related to the information to be provided to the Zohar Funds), 6 (discussions related to AMZAS's efforts to contact Portfolio Companies);

- PPAS's breach of its contractual obligation to turn over documents received from Portfolio Companies.  *See* Request Nos. 3 (documents provided to PPAS in its role as Administrative Agent), 5 (discussions related to the information to be provided to the Zohar Funds);

- The nature of the contractual relationship among the Zohar Funds, as Lenders, PPAS, as Administrative Agent, and the Portfolio Companies as Borrowers, which is material to the issue of whether the Zohar Funds acted within their rights to terminate PPAS as Administrative Agent.  *See* Request Nos. 1 and 2 (the contractual parties' understanding and execution of disputed terms related to irrevocable agency, disclaimer of fiduciary relationship, and PPAS's authorization to act on behalf of the Lenders), 15 (the selection of PPAS as Administrative Agent);

- PPAS's breach of its obligations to the Zohar Funds by amending Credit Agreements, reducing interest rates, and waiving the Portfolio Companies' accrued interest payment obligations.  *See* Request Nos. 7 (payments made to PPAS), 8 (treatment of accrued and unpaid interest), 9 and 10 (the Portfolio Companies' debt and lien structure), 11 (amendments of Credit Agreements), 12 (Events of Defaults that were waived), 13 (defaults or failures to pay);

---

[2]  As the Portfolio Companies correctly note, certain of the Subpoenas contained different topics than those set forth in other Subpoenas.  *See* Mot. 2-3.  This was the result of an inadvertent error, as the Zohar Funds intended to serve subpoenas with substantially similar requests.  The correct topics are those set forth in Exhibit B to the Portfolio Companies' motion (in the subpoena directed to Croscill Acquisition).  Counsel for the Zohar Funds and the Portfolio Companies have conferred on this issue, and the Zohar Funds will serve corrected documents for those Subpoenas that included the incorrect topics.

- PPAS's breach of its obligations to the Zohar Funds by failing to maintain the Zohar Funds' senior security interest in the Portfolio Companies' assets. *See* Request Nos. 9 and 10 (related to liens filed by PPAS and liens of any other creditor); and

- The Zohar Funds' affirmative defense of unjust enrichment. *See* Request No. 14 (actions taken by PPAS acting as Administrative Agent since June 1, 2016).

The topics covered by the Subpoenas thus either go directly to proving the claims and defenses in this case or could reasonably lead to other information that bears on them.

In addition, documents internal to the Portfolio Companies are just as relevant as the Portfolio Companies' external communications with Patriarch. For example, as parties to the Credit Agreements, the Portfolio Companies' understanding of the contracts' terms is just as pertinent to their interpretation as the internal deliberations of other parties to the Credit Agreements, such as PPAS. In particular, as the direct beneficiaries of the modifications that were made to the Credit Agreements, the Portfolio Companies' were in a position to understand whether the alternations were permitted and whether their dealings with Patriarch were consistent with the terms of the contracts. In a further example, the Portfolio Companies' internal documents are relevant to understanding the nature of the modifications that were made to the Credit Agreements. Because PPAS often amended loans "orally" or "by course of performance" (Am. Counterclaim ¶ 41), information as to unwritten amendments may not be neatly captured through party discovery, if at all, but may exist only in the Portfolio Companies' communications or notes recording the discussions they had with Patriarch.

Tellingly, the Portfolio Companies do not seriously dispute relevance. Indeed, other than conclusory assertions, the Portfolio Companies' entire argument is that the Subpoenas encompass "the Portfolio Companies' interactions with all Patriarch entities, not just PPAS," and that these interactions are irrelevant. Mot. 4. This argument is incorrect because the resolution of the contract issues in this case do not turn on *who* communicated with the Portfolio Companies but rather on

6

*what* was communicated with the Portfolio Companies. Indeed, an unauthorized, oral modification to the interest rates owed by the Portfolio Companies that was approved by PPAS would breach the contracts regardless of whether the modification was communicated to the Portfolio Companies by a Patriarch credit manager, a PPAS employee, or anyone else at Patriarch. Given this, the Portfolio Companies' communications are relevant regardless which Patriarch entity was involved.[3]

As this discussion shows, and as demonstrated further below (*see infra* § III), any burden imposed by the Subpoenas is entirely "proportional" to the issues in this case. Without discovery from the borrowers under the Credit Agreements, or the entities that directly benefitted from or were affected by the conduct reflecting PPAS's breaches, the record as to an essential part of this dispute will be left as a "black box." Further, the Subpoenas only cover a two-year period for most requests, and the time periods for other requests are necessarily limited by their scope. The Subpoenas thus more than satisfy the relevance requirements under Rule 26 and should be enforced.[4]

---

[3]  The Portfolio Companies' cited cases as to relevance are distinguishable. *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011), concerned a claim that eviction proceedings were brought against the plaintiff for discriminatory reasons yet the plaintiff's subpoena targeted information, such as the landlord's cable installation contracts, that had nothing to do with those proceedings. Similarly, in *Corbett v. eHome Credit Corp.*, No. 10 Civ. 26 (JG)(RLM), 2010 WL 3023870, at *3 (E.D.N.Y. Aug. 2, 2010), the plaintiff brought claims for mortgage fraud but the subject matter of his subpoenas was debt that was unrelated to his mortgage.

[4]  In their motion, the Portfolio Companies purport to describe the "meet and confer" between the parties before the motion to quash was requested. Among other things, they claim that the Zohar Funds did not articulate the relevance of the information requested by the Subpoenas and did not "resolve" their concerns. Mot. 5.

This claim is disingenuous. As an initial matter, justifications as to relevance were provided during the parties' discussion. Moreover, that discussion was not the meaningful "meet and confer" the Portfolio Companies attempt to portray. Rather, the purpose of the conference was for the Zohar Funds to get a "preview" of the Portfolio Companies' potential objections. The reason for this was, after having been served in early May 2017, the Portfolio Companies requested until early June to submit their written objections. As a compromise, the Zohar Funds agreed to permit written objections by late May so long as before then they received an indication of potential areas of dispute. At that conference, the Portfolio Companies made no mention of making this motion nor did they provide any explanation for why the Subpoenas were, as they claim now, unduly burdensome. Since that one conversation, and in light of this motion, there have been no further discussions as to the substance of the Subpoenas.

## II.      THE PORTFOLIO COMPANIES FAIL TO SHOW THAT THE SUBPOENAS ARE CUMULATIVE

Given the relevance of the requested documents, the Portfolio Companies have the burden of showing that the Subpoenas should be quashed for other reasons.  They fall far short of doing so.

The Portfolio Companies' primary argument is that the Subpoenas seek information that is also in the possession of PPAS.  *See* Mot. 3.  To that end, they claim that the "*only* requests in the Subpoenas for which it is conceivable that the Portfolio Companies might be the *sole source* of discovery" relate to interactions between them and the Zohar Funds.  *Id.* at 11 (emphasis added). This assertion wildly overreaches because the Subpoenas are not directed to just the Portfolio Companies' communications with PPAS but to the Portfolio Companies' own internal documents regarding the subject matter of this litigation.  For example, as to unwritten waivers of interest and fees owed by the Portfolio Companies to the Zohar Funds, there is a strong chance that the only contemporaneous documentary evidence of this is in the possession of the Portfolio Companies in the form of internal communications or notes memorializing a conversation with Ms. Tilton or others.  None of this information can be obtained from PPAS.

Thus, the Portfolio Companies' duplication argument is not really based on the assertion that PPAS and the Portfolio Companies have the same documents (which is only true in limited cases). Rather, it is based on the assertion that, even though PPAS and the Portfolio Companies have documents that cover the same subject matter, the Portfolio Companies' documents are irrelevant. Yet, this does not show that the Subpoenas are duplicative.  If anything, the Portfolio Companies' argument goes to the relevance of their documents, which as shown earlier (*infra* § I) is clear.

Even if there is some overlap of information between PPAS and the Portfolio Companies, in the form of information that they exchanged with each other, that still does not justify quashing the Subpoenas.  *See Kenyon*, 2016 WL 5930265, at *6 (rejecting argument that documents were also in

party's possession, reasoning that "Rule 26(b)(2)(C)(i) does not require [party and nonparty] requests to be circumscribed pens sharing no common ground.  It requires only that the overlap not be 'unreasonable.'") (omitting citation); *Viacom Int'l, Inc. v. YouTube, Inc.*, No. 08 Civ. 80129 (SI), 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008) ("the Court finds that the circumstances of this case are appropriate to require document production from third parties, even though the documents are likely to be in possession of defendants."); *see also State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*, No. 07 Civ. 51 (ENV) (MDG), 2007 WL 2993840, at *1 (E.D.N.Y. Oct. 10, 2007) ("nothing in the Federal Rules of Civil Procedure requires a litigant to rely solely on discovery obtained from an adversary instead of utilizing subpoenas.").

As an initial matter, the Subpoenas are entirely appropriate despite some overlap because the Zohar Funds have already attempted to seek information from PPAS but due to PPAS's withholding of relevant information, party discovery is still being negotiated and discussed.  Since the Zohar Funds have yet to receive relevant information from PPAS, they should not be precluded from attempting to obtain the same from the Portfolio Companies.  *See Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911 (HB)(HBP), 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004) (enforcing subpoena in part where "[subpoenaed party] has relevant documents that have not been produced by the defendants.") (relied on by the Portfolio companies); *Composition Roofers Union Local 30 Welfare Trust Fund v. Gravely Roofing Enters., Inc.*, 160 F.R.D. 70, 73 (E.D. Pa. 1995) (when party had attempted to obtain documents directly from party, but efforts were unsuccessful, nonparty witness could not oppose subpoena on grounds that documents were readily available from party); *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 301 (S.D.N.Y. 2003) (ordering

production of documents from a nonparty in spite of "the fact that the same documents may be available from [a party]").[5]

Nor should there be a need to wait for party discovery to be completed. *See Software Rights Archive, LLC v. Google, Inc.*, No. 07 Civ. 511 (JJF), 2009 WL 1438249, at *2 (D. Del. 2009) ("[T]here is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party.") (omitting internal quotation marks and citation). In particular, the Portfolio Companies and PPAS are controlled by the same person, Ms. Tilton. In light of this, it would be fundamentally unfair to permit one of Ms. Tilton's entities, PPAS, to delay discovery while at the same time her other

---

[5] The Portfolio Companies cite a number of cases in support of their argument that subpoenas should be quashed if the information can be obtained elsewhere but these cases are entirely inapposite. For example, in *Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226-28 (S.D.N.Y. 2013), and *Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 461 (E.D.N.Y. 2011), the requesting parties sought to use government employees as "experts" to support their claims—*i.e.*, in the case of *Anwar*, subpoenaing the S.E.C. to show that no one could have discovered the Madoff Ponzi scheme—facts that are entirely dissimilar from those here. In *Sherrill v. DIO Transp., Inc.*, 317 F.R.D. 609, 614 (D.S.C. 2016), the court concluded that a subpoena to the party's attorney was not duplicative even though the party had already engaged in discovery, and in *Wells v. Lamplight Farms, Inc.*, 298 F.R.D. 428, 433 (N.D. Iowa 2014), a product liability case, the court modified, rather than quashed, the subpoena to limit it to the specific product underlying the claims, and exclude the unrelated products that were initially targeted.

The rest of the cases are similarly unavailing. *See Brown v. City of Syracuse*, 648 F. Supp. 2d 461, 466 (N.D.N.Y. 2009) (in civil case relating to criminal case relating by assistant district attorney, enforcing subpoena as to ADA's supervisor but quashing subpoena for district attorney's testimony where there was no showing of what his testimony would be); *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03 Civ. 1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (subpoena related to claims of which requesting party had already obtained dismissal); *Jones v. Hirschfeld*, 219 F.R.D. 71, 77 (S.D.N.Y. 2003) (in breach of contract action brought by Paula Jones, quashing deposition subpoena directed to former President Clinton and finding that he did not have information relating to Ms. Jones's alleged agreement with defendant); *Koch v. Greenberg*, No. 07 Civ. 9600 (BSJ)(DF), 2009 WL 2143634, at *6 (S.D.N.Y. July 14, 2009) (in wine counterfeit case, quashing request in part that sought to have auction house produce information as to another wine seller's authentication policies even though there was no indication that the auction house would have that information); *Stokes v. Xerox Corp.*, No. 05 Civ. 71683 (DT), 2006 WL 6686584, at *2 (E.D. Mich. Oct. 5, 2006) (subpoena was directed to employee of a party, and thus the requested documents belonged to the party); *Sagebrush Sols., LLC v. Health Mgmt. Sys., Inc.*, 289 F.R.D. 251, 254 (S.D. Ohio 2013) (quashing subpoena because requesting party did not satisfy its initial burden of relevance).

10

entities, the Portfolio Companies, use that delay as an excuse not to comply with their third-party discovery obligations.

Moreover, even as to communications exchanged between the Portfolio Companies and Patriarch, the Portfolio Companies are an efficient repository for discovery.   Currently, party discovery involves only two custodians at Patriarch—Ms. Tilton and Renee Dudley. Communications between Patriarch and the Portfolio Companies, however, were not limited to these two individuals but would often times go through Patriarch credit managers.   Discovery also shows that Patriarch credit managers acted as the point of contact for Patriarch in dealings with third parties.   As a result, discovery relating to just those communications that involved Ms. Tilton and Ms. Dudley would mean that other relevant communications between the Portfolio Companies and Patriarch will be excluded from the record.   It may also be easier for each Portfolio Company to search one or two custodians than for PPAS to search all the potential individuals who may have interacted with the Portfolio Companies.   Thus, although some of the requested communications will overlap with party discovery, the Subpoenas are an efficient and reasonable way to obtain relevant information.

## III.     THE PORTFOLIO COMPANIES FAIL TO SHOW THAT THE SUBPOENAS ARE OVERBROAD OR UNDULY BURDENSOME

The Portfolio Companies' arguments as to overbreadth and burden should also be rejected. First, contrary to their assertion that the requests are not limited in time (Mot. 11), 11 of the 15 categories in the Subpoenas seek documents only from January 1, 2015, forward.   This roughly two-year time period is entirely reasonable given the nature of the actions alleged to have been taken by PPAS, including the amendment of Credit Agreements.   *See Sherrill*, 317 F.R.D. at 613 (relied on by the Portfolio Companies) (finding that 16-year period was not overbroad).   Of the four topics that are not restricted to this timeframe—Request Nos. 1, 2, 9, and 15—their time periods are necessarily

limited by their subject matter. Request Nos. 1, 2, and 15 relate to the negotiation and execution of the Portfolio Companies' original Credit Agreements and the selection of PPAS as Administrative Agent. Those negotiations only occurred over a discrete time period, which means, contrary to the Portfolio Companies' arguments, these requests are not "unlimited" in time. Similarly, Request No. 9 seeks information related the Portfolio Companies' lien and debt structure and, although that request is not restricted in time, it is limited to "documents sufficient" to show the requested information.

The Portfolio Companies also argue that the Subpoenas are overbroad because, in the definitions, PPAS and the Portfolio Companies are defined to include entities such as "predecessors," "successors," and "subsidiaries." This argument is a red herring because the Portfolio Companies do not actually explain how these textbook definitions would affect their collection of documents. Emails at one Portfolio Company would doubtless be searched using one system regardless of whether the Portfolio Company changed its name over time. Similarly, communications with Patriarch employees would be searched using key words and, as a practical matter, would not depend on whether the particular employee was associated with PPAS or PPAS's "parent" because, as the Zohar Funds presently understand, Patriarch uses only one email server and domain address for its employees.[6]

The Portfolio Companies' burden arguments are similarly unpersuasive. As an initial matter, the Portfolio Companies do not specify why compliance with the Subpoenas is unduly burdensome other than to make the conclusory assertion that it is. *See In re Ex Parte Application of Kleimar*

---

[6]  The only other argument as to overbreadth made by the Portfolio Companies is their claim that "several" requests are unlimited by subject matter. Mot. 11. Although the Portfolio Companies refer to "several" requests, in fact, their papers show that they only mean one—Request No. 3—and even that request is not unlimited by subject matter. Rather that Request relates to PPAS's breach of its contractual obligation to turn over documents received from Portfolio Companies and seeks production of those documents that the Portfolio Companies provided to PPAS its role as Administrative Agent, which is a limited category of documents.

*N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) (non-parties opposing subpoena "cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden … and the probable negative consequences of insisting on compliance.").  As a result, the Portfolio Companies' claims of burden relate to nothing more than the "normal burden of document production," which falls well short of proving that the Subpoenas should be quashed. *Kenyon*, 2016 WL 5930265, at *5.

Moreover, in claiming that "special weight" should be afforded to them as non-parties, the Portfolio Companies gloss over the fact that they are not true third-parties. *See Schwartz v. N.Y. City Off-Track Betting Corp.*, No. 92 Civ. 1166 (KMW), 1993 WL 42760, at *3 (S.D.N.Y. Feb. 11, 1993), ("even if a nonparty is still entitled to some enhanced protection against disclosure of confidential information and from burdensome discovery requests [after the 1991 amendments to Rule 45], [the nonparty] is so closely allied with the defendants and the information that she possesses is so pertinent that it must be disclosed."); *Kenyon*, 2016 WL 5930265, at *6 ("[non-party's] substantial role in the facts at issue in the Tennessee Action makes the value of its documents significantly greater than the normal burden of production"); *see also Software Rights Archive*, 2009 WL 1438249, at *2 ("[I]n considering how to allocate the costs of production from non-parties, it is relevant to inquire whether the putative non-party actually has an interest in the outcome of the case") (omitting citation and internal quotation marks); *Peskoff v. Faber*, No. 04 Civ. 526 (HHK) (JMF), 2006 WL 1933483, at *3 (D.D.C. July 11, 2006) (in granting motion to compel finding that "[t]his is not a situation … where a non-party is burdened by a subpoena relating to litigation to which it is has no or only a peripheral interest").[7]  The Portfolio Companies should not

---

[7]    The Portfolio Companies' cited cases as to burden are inapplicable.  None of them involved interested parties, as here.  They are also distinguishable on their facts.  *See Henry v. Morgan's Hotel Grp., Inc.*, No. 15 Civ. 1789 (ER)(JLC), 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (subpoena was a "blanket" request directed to "all" documents concerning, referring, or relating to "Henry," the plaintiff,

be afforded any "special weight" as non-parties because they are controlled, and their counsel are directed, by Ms. Tilton, who also controls PPAS. If nothing else, the Portfolio Companies are interested parties because they are the borrowers under the Credit Agreements and benefitted from the unauthorized amendments to these contracts, at the cost of the Zohar Funds. Their involvement here also should come as no surprise since they have been actively participating in other legal disputes between the Zohar Funds and Patriarch relating to the administration of the Credit Agreements. In light of these facts, there is nothing unduly burdensome about the Subpoenas.

## IV. IF NECESSARY, THE SUBPOENAS SHOULD BE MODIFIED RATHER THAN QUASHED

If necessary, the Court has the option of modifying the subpoenas rather than quashing them altogether. *See* Fed. R. Civ. P. 45(d)(3) (relating to "Quashing or Modifying a Subpoena"). Indeed, "[a] court should be loathe to quash a subpoena if other protection of less absolute character is possible." *Flanagan v. Wyndham Int'l, Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005); *see also Probulk Carriers Ltd. v. Marvel Int'l Mgmt. and Transp.*, 180 F. Supp. 3d 290, 294 (S.D.N.Y. 2016) (finding that modification of subpoena was the "appropriate course"). Here, each of the topics in the Subpoenas is relevant to this lawsuit and do not impose an undue burden on the Portfolio Companies. Nonetheless, to the extent the Portfolio Companies can show a legitimate issue as to burden, which they cannot, then the appropriate remedy should be to modify the Subpoenas rather than quash them. In particular, to the extent outstanding issues are resolved in party discovery

---

without identifying specific categories of documents); *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 42 (1st Cir. 2003) (finding, in anti-dumping lawsuit, that non-party's evaluation of plaintiff company for possible acquisition was not relevant or admissible to show that plaintiff's poor management, rather than defendants' dumping practices, caused its injuries); *Grigsby & Assocs., Inc. v. Rice Derivative Holdings, L.P.*, No. 00 Civ. 5056 (RO), 2001 WL 1135620, at *4 (S.D.N.Y. Sept. 26, 2001) (finding that certain requests as to transaction documents could be satisfied through party discovery and remaining requests were premature given certain undecided issues to which non-party discovery was not pertinent). And, in *Cohen v. City of N.Y.*, 255 F.R.D. 110, 121 (S.D.N.Y. 2008), the court rejected the subpoenaed party's claims of burden and denied the motion to quash while modifying the subpoena in part.

relating to discrete categories of documents for which there may be complete overlap, the Zohar

Funds would not need that information from the Portfolio Companies.[8]  However, given that there

have been no meaningful meet and confers as to the claimed burdens to the Portfolio Companies (*see*

*supra* at 7 n.4), and the Portfolio Companies have not provided a reasonable explanation why the

Subpoenas might be unduly burdensome, any modification to the Subpoenas should be without

prejudice to the Zohar Funds' seeking additional relief if necessary.

## V.    THE PORTFOLIO COMPANIES' CONFIDENTIALITY ARGUMENTS SHOULD BE REJECTED

Finally, in a last-ditch effort at misdirection, the Portfolio Companies claim that the

Subpoenas should be quashed for confidentiality reasons, specifically that the Zohar Funds cannot be

trusted with their information.  *See* Mot. 7-8.  First, they claim that the Zohar Funds have refused to

execute a suitable confidentiality agreement with the Portfolio Companies.  The reality is, that

confidentiality agreement has nothing to do with the provision of documents in this case, since the

Portfolio Companies have refused to produce any, and the Portfolio Companies offer no legitimate

reason why the Protective Order issued by this Court is insufficient.[9]  Indeed, the Court previously

recognized that the Protective Order in this case would be appropriate for third-party discovery.  Jan.

13, 2017 Tr. 32 ("And I will say that to the extent that there is a subpoena on a third party and

---

[8]  This would include, for example, Request No. 7 insofar as it seeks invoices (which we believe have been produced in full) and documents reflecting payments made to PPAS (which the parties are still discussing).

[9]  Moreover, although the Portfolio Companies point to AMZM as the reason no confidentiality agreement has been agreed to outside of this case, the true reason there is no agreement is the Portfolio Companies' continuing insistence on unreasonable terms, including draconian limits on the use of any information provided to AMZM and indemnification obligations even though AMZM needs to have broad access to and use of information to perform its obligations as collateral manager and assess the value of the Zohar Funds' assets and the performance of the Portfolio Companies.  In the end, the Portfolio Companies' insistence on their proposed terms are less about confidentiality concerns than preventing AMZM from obtaining the information it needs to perform its management functions.

there's confidentiality concerns, the same confidentiality order that I have on my individual practices page could be used.").

Second, the Portfolio Companies devote a considerable portion of their papers to alleged "covert" actions by the Zohar Funds to circumvent the Portfolio Companies' attorney client privilege. *See* Mot. 6-7. The reality is again starkly different. Indeed, the only instance in which the Portfolio Companies have sought judicial remedies for the Zohar Funds' conduct in respect of Portfolio Company documents was met with resounding ambivalence. In 2016, the President and CEO of a Portfolio Company intentionally and voluntarily sent six emails to a manager at AMZM, and one of these emails forwarded an email from a partner at counsel for the Portfolio Companies. In the litigation captioned *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc., et al.*, counsel for the Portfolio Companies asserted a claim of privilege over the emails sent to the AMZM manager, threatened to attempt to disqualify counsel for AMZM, and moved to depose counsel for AMZM to support a further application for sanctions. *See* June 7, 2017 Tr. 27 (relevant excerpts of which are attached as Exhibit A).

The Portfolio Company then voluntarily dropped its assertion of privilege as to three of the six emails. *See id.* at 28. As to two of the remaining three emails, the court saw "no basis to find even a colorable claim of privilege." *See id.* at 30. As to the last email, the court saw "potentially good arguments to defeat the privilege" and "strong arguments that the privilege has been waived." *See id.* at 33. But "giving the benefit of the doubt to [the Portfolio Company]," the court saw "how it might give rise to a colorable claim of privilege," and found that "best practice would have been for [AMZM's] counsel to alert opposing counsel" of the document. *See id.* at 32-33. The court further found the document to be "entirely inconsequential" and that there had been "no threat to the

16

fairness of the proceedings," required counsel for AMZM to return the document, and denied the Portfolio Company's request for any additional relief.  *See id.* at 34-35.

The bottom line is, the Portfolio Companies' confidentiality argument is nothing more than a desperate attempt at mud-slinging aimed at distracting from the merits of the Subpoenas.  The Protective Order in this case should be used, and the Portfolio Companies should be required to comply with the Subpoenas.

## **CONCLUSION**

The motion to quash should be denied.


Dated:        June 21, 2017                    Respectfully submitted,

                                              QUINN EMANUEL URQUHART
                                              & SULLIVAN, LLP

                                              By: /s/ Jonathan E. Pickhardt
                                              Michael B. Carlinsky
                                              Jonathan E. Pickhardt
                                              Rex Lee

                                              51 Madison Avenue, 22nd Floor
                                              New York, NY 10010
                                              Telephone: (212) 849-7000

                                              *Attorneys for the Zohar Funds*