quinn emanuel    trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7115**

September 29, 2017

WRITER'S EMAIL ADDRESS
**jonpickhardt@quinnemanuel.com**

**BY ECF**
The Honorable Katharine H. Parker
United States Magistrate Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1950
New York, New York 10007

Re:   *Patriarch Partners Agency Servs., LLC v. Zohar CDO 2003-1, Ltd. et al.*,
       No. 16 Civ. 4488 (VM)(KHP)

Dear Judge Parker:

      We write on behalf of the Zohar Funds pursuant to Your Honor's September 26, 2017 Order (Dkt. 128) to address the following issues due, in part, to PPAS's lack of document production: (1) PPAS's attempt to limit the scope of questioning in its witnesses' depositions; (2) the length and timing of Lynn Tilton's deposition; and (3) the number of depositions that the Zohar Funds may take.

    **I.**    **Scope Of Permissible Questioning For PPAS Depositions**

      PPAS seeks to limit the questions that may be asked at the depositions of its witnesses, and Ms. Tilton, in particular. PPAS claims that prior to November 2015 it lacked discretion in carrying out its responsibilities as Administrative Agent and therefore cannot be liable for its misconduct prior to that date.[1] Based on this characterization of its duties, PPAS wants to foreclose discovery prior to November 2015. This arbitrary cut-off date ignores a number of earlier amendments that severely prejudiced the Zohar Funds' rights as lenders.[2] For context, a

---

[1] In November 2015, PPAS and the Zohar Funds purported to pass amendments to the Credit Agreements that granted PPAS significant additional discretion in its role, including the ability to declare or waive Events of Default, and defer or postpone past due fees, with or without the approval of the Lenders.

[2] These pre-November 2015 amendments include amendments granting priority to liens held by Ark II over liens held by the Zohar Funds, cancelling interest payments on certain loans held by the Funds, reducing the interest rates owed by the Portfolio Companies to the Zohar Funds, and removing financial covenants from the Credit Agreements that had previously protected the Zohar Funds from deterioration in the financial condition of the Portfolio Companies.

non-exhaustive list of detrimental Credit Agreement amendments and waivers before and after November 2015 is attached hereto as Exhibit A. The artificial limitation on Ms. Tilton's testimony requested by PPAS is unwarranted for multiple reasons and should be denied.

*First*, Ms. Tilton was directly involved in all of the conduct at issue here. Whether acting in her capacity as principal at the Collateral Manager (pre-November 2015) or principal at PPAS (post-November 2015), Ms. Tilton made the discretionary determinations to amend the Credit Agreements. Ms. Tilton's understanding of the purpose of those discretionary amendments prior to November 2015—such as whether the companies whose debt obligations were being modified had the financial ability to service their debts absent concessions by their lenders—informs her understanding of those same issues after November 2015. Moreover, Ms. Tilton's pre-November 2015 amendment activity set the stage for her decision to transfer discretion over amending the Credit Agreements from the Collateral Manager to PPAS. With discretion purportedly transferred to PPAS, Ms. Tilton continued the same type of injurious activity—only now insulated from losing her ability to conduct such activity when she was removed as Collateral Manager in March 2016. Imposing this artificial temporal cut-off is unnecessarily disruptive to her examination and will foreclose relevant information about Ms. Tilton's intent based on a formal distinction Tilton never imposed on herself at the time. The appropriate time for resolution of PPAS's relevance arguments is trial, not in the midst of a deposition.

*Second*, PPAS argues that the deposition should be limited because the Zohar Funds' really seek improper pre-discovery for use in a parallel action in front of Judge Pauley. This is not so. While Ms. Tilton's alleged misconduct here overlaps with her misconduct at issue in the Pauley action, that overlap should not bar discovery here. Indeed, the fact that Ms. Tilton voluntarily elected to structure her responsibilities with multitudes of overlapping (and conflicting) roles should not now be utilized as a shield from discovery of Ms. Tilton simply because the information might be potentially pertinent to multiple disputes.

*Third*, the Zohar Funds intend to present an argument at trial that PPAS was a disloyal agent terminable at the Zohar Funds' discretion. The Zohar Funds anticipate that the factual narrative concerning amendments to the Credit Agreements leading up to, and after, November 2015, will be a core component of this defense. The Zohar Funds intend to show that, facing the imminent transfer of Patriarch's Collateral Management responsibilities, the November 2015 Amendments represent PPAS's attempt to wrest exclusive authority to enforce key rights of Zohar Funds *specifically to frustrate the Zohar Funds' ability* to enforce their rights and remediate the damage done by the preceding months' Amendments. Based on this factual narrative, the Zohar Funds believe they will establish that PPAS was a disloyal agent and its termination was justified, regardless of the effectiveness of the "irrevocable" appointment appearing in the Credit Agreement.

In light of the importance of actions prior to November 2015 to the Zohar Funds' claims and defenses, PPAS's effort to narrow the scope of permissible topics for the Tilton deposition should be rejected.

**II.     Length And Timing Of Tilton Deposition**

Lynn Tilton, as the sole owner, director, and employee of PPAS, is unequivocally the primary repository of factual information concerning PPAS's historical activities and conduct. In addition to being a critical fact witness, Ms. Tilton is the only appropriate 30(b)(6) witness on several subjects included in the Zohar Funds' 30(b)(6) Notice to PPAS, including the basis of PPAS's exercising of its consent rights to amend the credit agreements and waive defaults. Moreover, as far as we understand, PPAS has no other employees.   In light of her central role, the Zohar Funds have requested the opportunity to depose Ms. Tilton for two days.   PPAS has insisted that Ms. Tilton appear for only one day, and no sooner than the very last day of fact discovery, despite the Zohar Funds making themselves available throughout the deposition period.

The Zohar Funds' respectfully request that Ms. Tilton be ordered to sit for two days of deposition and further request that she be ordered to sit for deposition before the last day of the fact discovery period.  As a preliminary matter, Ms. Tilton should be deposed as both an individual and a corporate witness, and "the depositions of an individual witness pursuant to Fed. R. Civ. P. 30(b)(1) and who is also produced as a corporate representative pursuant to Fed R. Civ. P. 30(b)(6) are presumptively subject to independent seven-hour time limits," meaning two days in total.  *Sabre v. First Dominion Capital, LLC*, No. 01CIV214(BSJ)(HBP), 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001).   PPAS offers no justification for a departure from this typical approach, particularly here where Ms. Tilton is a central repository of material information concerning the Zohar Funds' claims and defenses.   Even if Ms. Tilton's dual depositions were usually subject to a one-day, seven-hour limit, additional time would be warranted here where it is "needed to fairly examine" Ms. Tilton, *see* Fed. R. Civ. P. 30(d)(1), because she is "a central figure to this action."    *See Greater N.Y. Taxi Ass'n v. City of N. Y.*, No. 13 Civ. 3089 (VSB)(JCF), 2017 WL 4012051, at *8 (S.D.N.Y. Sept. 11, 2017) (granting an additional seven hours). More deposition time is particularly appropriate here given the gaping holes in PPAS's document production, and frequently-changing management of Portfolio Companies.   As the Court knows, PPAS initially produced effectively no emails relating to the amendments and waivers at issue, and then, when ordered to conduct a further review of its documents without regard for the "hat" being worn by its custodians, produced nothing at all.   It seems extremely unlikely that ***approximately one hundred*** Amendments between lender, agent, and more than 20 different borrowers, that reduced debt obligations by hundreds of millions of dollars (*See* Exhibit A) would have been agreed to and executed without so much as one email being sent.  But if these scores of Amendments were in fact discussed exclusively orally, deposition testimony is the only effective means for the Zohar Funds to develop evidence on these subjects.

Of course, the Zohar Funds will endeavor to complete Ms. Tilton's deposition as quickly as possible.  But with numerous core subjects to cover with her—including the relationship between the Zohar Funds as principal and PPAS as agent, PPAS's scores of Amendments and waivers extinguishing hundreds of millions of dollars of obligations owed to the Zohar Funds, documents and communications PPAS has received from Portfolio Companies, PPAS's withholding of $800,000 it received in the bankruptcy of Transcare—a multi-day deposition is almost certainly necessary.    For the foregoing reasons, the Zohar Funds respectfully request that

Ms. Tilton be ordered to appear for two days of deposition, with the first day occurring not later than October 13, 2017.

### III. Number of Portfolio Company Depositions

The Zohar Funds are seeking the deposition of current or former employees from a number of portfolio companies in order to probe centrally relevant topics such as the documents that Portfolio Companies sent to PPAS (who then breached its obligation to provide the same to the Zohar Funds) and the facts and circumstances around punitive amendments to the Credit Agreements, including whether those amendments were justified by legitimate business considerations. These depositions are particularly necessary in light of the remarkably inadequate documentary discovery provided by PPAS and, thus far, the Portfolio Companies. Furthermore, though the Zohar Funds believe that demonstrating PPAS' faithlessness and breaches as to some subset of the Credit Agreements is sufficient for the Zohar Funds to entirely prevail on their claims, PPAS may argue the contrary. If the Zohar Funds are required at trial to adduce evidence as to faithlessness under each and every one of the Credit Agreements at issue in this case, limiting the Zohar Funds to the ten depositions provided for under F.R.C.P. 30(a) would prejudice the Zohar Funds' ability to adequately present their case.

PPAS objects to any increase in the number of depositions provided for under F.R.C.P. 30(a). We understand from the Court's rulings at the conference held earlier today that it intends to consider what deposition of Portfolio Company witness the Zohar Funds will be permitted to take at a follow up conference that has been scheduled for October 30 after the deposition of Ms. Tilton. We therefore will defer further argument in respect of PPAS's objection until submissions are made in respect of the October 30 conference.

Respectfully submitted,
QUINN EMANUEL URQUHART & SULLIVAN LLP

By: *[signature: Jon Pickhardt]*

    Jonathan E. Pickhardt
    Rex Lee
    Ellison Ward Merkel
    Blair A. Adams
    51 Madison Avenue, 22nd Floor
    New York, New York, 10010
    Tel.: 212-849-7000

*Attorneys for Zohar CDO 2003-I, Ltd., Zohar CDO 2003-1, LLC, Zohar II 2005-1, Ltd., Zohar II 2005-1, LLC, Zohar III, Ltd., Zohar III, LLC and*

*Alvarez & Marsal Zohar Management, LLC*