USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/4/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

PATRIARCH PARTNERS AGENCY SERVICES, LLC,

                    Plaintiff,

          -against-

ZOHAR CDO 2003-1, LTD,. *et al*.,

                  Defendants.

-------------------------------------------------------------------X

**OPINION, REPORT AND
RECOMMENDATION**

**16-cv-04488 (VM) (KHP)**

**TO: THE HONORABLE VICTOR MARRERO, United States District Judge**

**FROM: KATHARINE H. PARKER, United States Magistrate Judge**

       Plaintiff Patriarch Partners Agency Services, LLC ("PPAS") commenced this action against

Defendants Zohar CDO 2003-1, Ltd., Zohar II 2005-1, Ltd., and Zohar III, Ltd. (the "Zohar

Funds"), alleging claims for breach of contract, tortious interference, and declaratory relief

arising out of the Zohar Funds' purported termination of PPAS as Administrative Agent under a

series of Credit Agreements. The Zohar Funds subsequently asserted counterclaims against

PPAS for breach of contract, conversion, and a declaratory judgment affirming that the Zohar

Funds had the right to replace PPAS as Administrative Agent under the Credit Agreements.

       Presently before this Court is the Zohar Funds' motion for leave to file a Third Amended

Answer and Counterclaims ("TAC"), pursuant to Federal Rules of Civil Procedure 15 and 16, to

add new counterclaims for breach of contract, breach of the implied covenant of good faith and

fair dealing, money had and received, and the imposition of a constructive trust against PPAS.

(Doc. No. 157.) For the reasons set forth below, this Court recommends that the Zohar Funds'

motion for leave to amend be denied to the extent it seeks to add causes of action for breach of

the implied covenant of good faith and fair dealing, money had and received, and for a constructive trust. This Court grants the Zohar Funds' motion for leave to amend insofar as they seek to assert two additional claims for breach of contract.

## FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

### A. Background

The Zohar Funds were formed by Lynn Tilton as investment vehicles established to raise capital through the issuance of collateralized loan obligations to Noteholders for the purpose of investing in debt and other assets of various distressed manufacturing companies (the "Portfolio Companies"). The Zohar Funds used much of the funds raised from the Noteholders to originate or acquire loans extended to the Portfolio Companies—companies that are also managed or controlled by Ms. Tilton.[1] The loan arrangements between the Zohar Funds and the various Portfolio Companies are governed by Credit Agreements and other lending documents. The Credit Agreements set forth the basic terms of the loans issued to the Portfolio Companies, as well as numerous other covenants and obligations.[2]

Prior to March 2016, the Zohar Funds' investments and assets were collaterally managed by affiliates of Patriarch Partners, LLC ("Patriarch"), investment firms owned by Ms. Tilton. The Zohar Funds appointed PPAS—another Patriarch affiliate that is controlled by Ms. Tilton—as Administrative Agent. As such, PPAS administered the loans that the Zohar Funds

---

[1] In Ms. Tilton's role as CEO, Manager, and/or Director of each of the Portfolio Companies, she oversees the Portfolio Companies' operations and management of their cash flows.

[2] Most of the Credit Agreements follow the same format and contain the same provisions. For purposes of this motion, the parties' briefs primarily discuss one Credit Agreement as an example. Nothing in this decision is intended to limit or otherwise address either party's arguments about potential differences between the Credit Agreements in the future.

extended to the Portfolio Companies. The Credit Agreements set forth the rights and duties of the Administrative Agent *vis-à-vis* the Lenders (the Zohar Funds) and the Borrowers (the Portfolio Companies).

On March 3, 2016, the Zohar Funds terminated Patriarch as Collateral Manager for the Funds and identified Alvarez & Marsal Zohar Management, LLC ("AMZM") as the new Collateral Manager. On June 14, 2016, the Zohar Funds informed PPAS that they were terminating PPAS as Administrative Agent under each of the Credit Agreements, effective June 17, 2016. The Zohar Funds further informed PPAS that it was appointing Alvarez & Marsal Zohar Agency Services as the successor Administrative Agent.[3]

**B.   Factual Allegations In The TAC**

   *1.   The Portfolio Company Draw Downs And Alleged Secret Revolvers*

The Credit Agreements at issue between the Zohar Funds and the Portfolio Companies contain various types of loan arrangements. Many of the Credit Agreements contained simple term loans. However, certain Credit Agreements provided for two alternative types of loan facilities: (1) revolving credit facilities and (2) delayed draw term loans (collectively, the "Draw Down Loans"). Under both types of Draw Down Loans, the Lender (*i.e.,* the Zohar Funds) commits a certain amount of money that the Borrower (*i.e.,* the Portfolio Company) can request to draw from over a period of time. Upon approval of a request for Draw Down Loan funds, the Zohar Funds make the requested amount available to PPAS who, in turn, remits the loaned funds to the Portfolio Company.

---

[3] PPAS' claims against the Zohar Funds in this action relate to the validity of the Funds' purported removal of PPAS as Administrative Agent. Since these claims are not pertinent to the current motion, this decision does not address the factual or legal bases for PPAS' claims.

In early 2016, around the time when Patriarch was replaced as Collateral Manager, eight Portfolio Companies withdrew the full amounts available under their Draw Down Loans. Several of these draw-down requests were authorized by Patriarch as Collateral Manager, whereas others were authorized by AMZM. The Zohar Funds allege that Patriarch characterized these draw-downs as requested by the Portfolio Companies, but that Ms. Tilton on behalf of PPAS, and not on behalf of the Portfolio Companies, was in fact the one who made the requests.

Historically, the Portfolio Companies regularly drew and repaid money under the Draw Down Loans. The Zohar Funds allege that PPAS was required to distribute the Portfolio Companies' repayments on the loans to the Zohar Funds under the terms of the Credit Agreements. They further assert that, prior to Patriarch's resignation as Collateral Manager in March 2016, PPAS' regular practice was to pass all repayments received from the Portfolio Companies immediately to the Zohar Funds.

The Zohar Funds allege that after Patriarch's resignation, PPAS covertly changed its practices with respect to its administration of the Draw Down Loans. According to the Zohar Funds, rather than passing the amounts loaned directly to the Portfolio Companies, PPAS:

> held those funds in its own accounts, purportedly for the benefit of the borrowers, proving funds to the Portfolio Companies whenever PPAS preferred or deemed it necessary. In this way, PPAS effectively appointed itself the shadow collateral manager for a shadow revolving credit facility. Indeed, the Portfolio Companies were informed that they had drawn down their [Draw Down Loans], but were not being given access to the funds, and would have to make borrowing requests—historically made to the collateral managers—to *PPAS* in order to access these funds.

 (TAC ¶ 52) (emphasis in original).

The Zohar Funds further allege that "to the extent that repayment on [the Draw Down Loans] was received *from* the borrowers . . . PPAS would again hold the money in its own

account so that it could lend the funds back out as it saw fit, rather than passing along the proceeds pro rata to the Zohar Funds." (TAC ¶ 53) (emphasis in original). They claim that PPAS continued to hold these amounts—which totaled approximately $45 million as of October 13, 2017—even as some of the eight Portfolio Companies for whom the money was held were defaulting on their payment obligations to the Zohar Funds. PPAS purportedly tracked the Portfolio Companies' borrowing and repayment activity with respect to these drawn-down funds using a separate spreadsheet that was not shared with the Zohar Funds. The Zohar Funds allege that these practices were a deviation from PPAS' historical course of conduct and that PPAS did not advise either the Zohar Funds or AMZM about this change in practice.

    2. *Events Of Default*

    Under the Credit Agreements, the Zohar Funds are entitled to exercise certain remedies upon an "Event of Default," such as the Portfolio Company's failure to make timely principal or interest payments. Available remedies in an Event of Default include, *inter alia*, accelerating the maturity of any outstanding loans and foreclosing against collateral securing those loans. The Credit Agreements further provide that in the Event of Default, the Agent is required to take whatever action is "reasonably directed by the Lenders." (TAC ¶ 22 (citing § 9.10 of the Credit Agreements).) Most of the Credit Agreements also give the Lender and Agent a right of setoff upon and during an Event of Default, meaning that they can "set off and [] appropriate and [] apply any and all deposits . . . at any time held or owing by such Lender or the Agent to or for the credit or the account of any Credit Party against and on account of the Obligations of any Credit Party to such Lender or the Agent hereunder, irrespective of whether or not (a) such Lender or the Agent shall have made any demand hereunder or (b) the principal of or the

interest on the Loans or any other amounts due hereunder or the other Credit Documents shall have become due and payable and although such obligations and liabilities, or any of them, may be contingent or unmatured." (TAC ¶ 23 (citing § 7.4 of the Credit Agreements).)

Since AMZM assumed the role of Collateral Manager in March 2016, a number of Portfolio Companies have failed to make interest payments for one or more periods, triggering an Event of Default under their Credit Agreements. AMZM notified the defaulting Portfolio Companies and PPAS of the payment delinquencies on a monthly basis. The Zohar Funds allege that for some of these defaulted Portfolio Companies, PPAS has continued to maintain in its banks accounts the Portfolio Companies' funds that were loaned under the Draw Down Loans, as well as the Portfolio Companies' repayments on such loans, even though the Companies were defaulting on their payment obligations to the Zohar Funds.

On October 9, 2017, AMZM sent notice on behalf of the Zohar Funds to certain Portfolio Companies advising that each Company had failed to make required payments and had therefore triggered an Event of Default under their Credit Agreement. The October 9, 2017 notices stated that "[t]he Required Lenders hereby instruct PPAS to send notice immediately to the [Defaulted Borrowers] declaring all unpaid principal, interest, and any other Obligations immediately due and payable without presentment, demand, protest or other notice of any kind, and any and all [Draw Down Loans] are hereby terminated . . . . (TAC ¶ 59.) The notices also stated that "[t]o the extent proceeds of collateral are collected, by foreclosure or otherwise, all such proceeds should be applied as required under the Credit Agreement." (TAC ¶ 59.) They further advised that if PPAS believed that complying with the instructions would cause harm that would reduce the recoveries to the Lenders, then AMZM was prepared to

meet with PPAS to discuss such concerns.

In response, Mr. Tilton sent AMZM a letter acknowledging the defaults and requesting an advance of the costs associated with winding down the operations of certain Portfolio Companies. This letter further stated that PPAS would proceed with carrying out AMZM's instructions once it was advanced wind-down costs of $2 million per company.

On October 15, 2017, AMZM further demanded that PPAS remit to the Zohar Funds all funds being held in any PPAS account that have been received from, or held for the benefit of, any of the defaulted Portfolio Companies. AMZM demanded that any currently held funds be delivered by October 17, 2017 and, thereafter, that PPAS promptly wire to the Zohar Funds any funds obtained in the future from the defaulted Portfolio Companies. PPAS refused to comply with AMZM's instructions to transfer the funds.

### C. Procedural History

PPAS commenced this action on June 15, 2016. The Zohar Funds filed their Answer on July 13, 2016, but did not assert any counterclaims at this time. On August 19, 2016, the Honorable Victor Marrero held an initial pretrial conference and issued a Civil Case Management Plan and Scheduling Order ("Scheduling Order"). According to the Scheduling Order, the parties could amend their pleadings without leave of Court by January 13, 2017. (Doc. No. 28.)

On January 13, 2017, the Zohar Funds filed an Amended Answer and Counterclaims against PPAS. The Zohar Funds' counterclaims included three causes of action for breach of contract, as well as claims for breach of fiduciary duty, conversion, and for declaratory relief. PPAS subsequently moved to dismiss the Zohar Funds' counterclaims. On April 20, 2017, Judge

Marrero granted PPAS' motion in part, dismissing the breach of fiduciary duty claim on the grounds that the Zohar Funds had failed to allege any breach of fiduciary duty by PPAS that was separate and distinct from any breach of the Credit Agreements. (Doc. No. 91.) The Court otherwise denied PPAS' motion to dismiss. On May 10, 2017, the Zohar Funds filed their Second Amended Answer and Counterclaims.

Document discovery in this action has been ongoing over the past year. Both sides have promulgated and responded to written discovery requests, as well as produced thousands of documents. The parties have appeared before this Court on multiple occasions to address disputes over the scope of discovery. As is relevant to this motion, this Court previously overruled PPAS' objections to the Zohar Funds' request that PPAS produce its bank statements, but held that PPAS would be permitted to redact certain confidential, irrelevant information. PPAS produced these redacted statements in September, in a form that the Zohar Funds characterize as "heavily redacted." (Doc. No. 165 p. 3.) The Zohar Funds have also served subpoenas for discovery on non-party entities, including from the Portfolio Companies.

The parties began depositions in September 2017. Thus far, PPAS has taken the depositions of two AMZM employees. On October 11, 2017, the Zohar Funds conducted the deposition of Renee Dudley, Patriarch's Vice President of Loan Administration. On October 13, 2017, the Zohar Funds deposed Carlos Mercado, Patriarch's Controller. At these depositions, the Zohar Funds allege that they first learned the new facts that underlie this instant motion, including that PPAS has been holding at least $45 million in the Zohar Funds' cash and using these funds to operate "concealed 'shadow' revolver facilities for the Portfolio Companies." (Doc. No. 161 p. 1.)

Following these depositions, the Zohar Funds demanded that PPAS produce various categories of documents related to the Draw Down Loans and the alleged "shadow revolvers." When PPAS objected to this request, the Zohar Funds cancelled the deposition of Ms. Tilton, which was scheduled for October 18, 2017. Ms. Tilton's deposition has yet to occur. It also appears that, based on the parties' prior representations to the Court, there are still additional depositions to be conducted, including potential third-party depositions of certain Portfolio Company representatives.

**D.   The Zohar Funds' Motion For Injunctive Relief**

On October 19, 2017, the Zohar Funds filed a motion for a temporary restraining order and preliminary injunction and the instant motion for leave to amend. This request for emergency injunctive relief was premised upon the information adduced during the depositions of Mr. Mercado and Ms. Dudley. The Honorable Paul A. Crotty denied the Zohar Funds' application for a temporary restraining order without prejudice to the prompt consideration of an application for a preliminary injunction before Judge Marrero. (Doc. No. 146.) On October 23, 2017, Judge Marrero held a telephonic conference regarding the Zohar Funds' request for injunctive relief. During the conference, the Court orally denied the application and subsequently memorialized its ruling in a written decision dated November 14, 2017. (Doc. No. 154.) Judge Marrero held that the Zohar Funds were not entitled to a preliminary injunction because they had failed to demonstrate that "they would suffer an immediate injury that cannot be remedied by money damages after trial." (Doc. No. 154 p. 3-4.) Judge Marrero referred the Zohar Funds' motion for leave to amend to the undersigned.

### E. **The Zohar Funds' Motion For Leave To Amend**

The Zohar Funds' proposed TAC alleges five new counterclaims, all of which arise out of the factual allegations set forth in Section B, *infra*. Specifically, the proposed TAC alleges the following new causes of action:

- Breach of contract (Count III) premised upon PPAS' failure to tender all amounts it held on behalf of the defaulted Portfolio Companies to the Zohar Funds, as demanded in AMZM's October 9, 2017 notices and October 15, 2017 letter to Ms. Tilton. The Zohar Funds allege that PPAS was required to remit such funds at the direction of the Lenders under the terms of the Credit Agreement, and that PPAS' failure to deliver the money constitutes a breach of the provisions of the Credit Agreements.

- Breach of contract (Count V) premised upon PPAS' failure to promptly distribute repayments received from the Portfolio Companies on the Draw Down Loans to the Zohar Funds in accordance with the terms of the Credit Agreements.

- Breach of the implied covenant of good faith and fair dealing (Count VII) based upon PPAS' alleged conduct that has frustrated the Zohar Funds' ability to recognize the benefit of their bargains under the Credit Agreements. Specifically, the Zohar Funds allege that PPAS has worked to deprive the Zohar Funds of their due benefits by: (i) holding money that the Zohar Funds had loaned to the Portfolio Companies in PPAS' bank accounts; (ii) failing to forward payments received from the Portfolio Companies in connection with the Draw Down Loans to the Zohar Funds; (iii) continuing to hold such funds for the benefits of the

Portfolio Companies even when the Portfolio Companies were defaulting on their obligations to the Zohar Funds; and (iv) refusing to comply with the Zohar Funds' directives to remit any funds held in PPAS' accounts on behalf of the defaulted Portfolio Companies.

- Money had and received (Count IX) premised upon PPAS' failure to promptly distribute repayments received from the Portfolio Companies on the Draw Down Loans to the Zohar Funds. The Zohar Funds further allege that PPAS has unfairly benefitted from such funds and that equitable principles require that restitution be made by PPAS to the Zohar Funds in an amount to be proved at trial.

- Constructive trust (Count X) premised upon PPAS' failure to promptly distribute repayments received from the Portfolio Companies on the Draw Down Loans to the Zohar Funds. The Zohar Funds allege that PPAS expressly agreed to act on the reasonable instructions of the Zohar Funds to exercise all rights and remedies set forth in the Credit Agreements and that the Zohar Funds relied on these promises in agreeing to transfer loan proceeds for the Draw Down Loans to PPAS for the benefit of the Portfolio Companies. They further claim that equitable principles require that restitution be made by PPAS to the Zohar Funds in an amount to be proved at trial.

PPAS opposes the Zohar Funds' motion for leave to amend its counterclaims for several reasons. First, it contends that leave to amend should be denied under Rule 16(b) because the Zohar Funds have failed to show good cause for seeking amendment after the deadline set forth in the Scheduling Order. In PPAS' view, the Zohar Funds have had access to the facts

underlying their newly proposed counterclaims since before the inception of this litigation. PPAS points out that: (i) since March 2016, the Zohar Funds have known that the Portfolio Companies fully drew down the amounts available under the Draw Down Loans; (ii) in October 2016, AMZM noted in a stockholder presentation that the Portfolio Companies' principal payments had dropped off when contrasted with historical payment activity; and (iii) the Zohar Funds had access to PPAS' bank statements and Trustee bank statements which reflected that PPAS was carrying a significant account balance. Based on these facts, PPAS asserts that the Zohar Funds knew or should have known that PPAS was not remitting certain Portfolio Company funds to the Zohar Funds.

PPAS also argues that leave to amend should be denied under Rule 15(a) on the basis of delay, prejudice, and futility. PPAS contends that the proposed amendments would "delay[] the outcome of this case for many months" and would require PPAS to expend significant additional time and resources to defend against the new counterclaims, including in connection with conducting further written discovery and document review, preparing witnesses for depositions, and re-deposing witnesses. (Doc. No. 164 pp. 14-19.) It also asserts that the Zohar Funds' proposed amendments should be denied as futile because (i) both of the Zohar Funds' breach of contract claims are foreclosed by the terms of the Credit Agreements and (ii) the equitable claims are duplicative of the Zohar Funds' proposed breach of contract claims.

On November 16, 2017, this Court held oral argument on the Zohar Funds' motion to amend. During this conference, the Zohar Funds indicated that they would be seeking additional discovery regarding PPAS' practices with respect to the Draw Down Loans irrespective of whether their motion to amend is granted. The Court declined to address the

Zohar Funds' arguments concerning discovery at the conference, but advised that it would set a schedule for briefing discovery disputes in its written decision on the motion to amend.

**DISCUSSION**

**I.    LEGAL STANDARD TO AMEND A PLEADING**

Under Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (citation omitted). Under Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000).

Where, as here, there is a scheduling order in place that establishes a deadline for seeking leave to amend, "the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009); *see also* Fed. R. Civ. P. 16(b)(4) (a scheduling order "may be modified only for good cause and with the judge's consent."). The determination of

whether "good cause" exists under Rule 16(b) largely turns on the diligence of the moving party. *Holmes*, 568 F.3d at 335; *see also Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (to show good cause, moving party must demonstrate that "despite its having exercised diligence, the applicable deadline could not have been reasonably met") (citation omitted).

## II.    APPLICATION TO ZOHAR FUNDS' MOTION TO AMEND

### A.  *Good Cause To Amend Under Rule 16*

PPAS contends that the motion for leave to amend should be denied because the Zohar Funds have failed to establish good cause for amendment beyond the deadline set forth in the Scheduling Order.

As set forth above, the determination of whether good cause exists to modify a scheduling order primarily focuses on the diligence of the moving party. *See Holmes*, 568 F.3d at 335. "Where delayed discovery prevented a party from discovering facts sufficient to support a cause of action, a party must show that it acted diligently upon learning the new facts." *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 37 (S.D.N.Y. 2016) (citing *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (where delayed discovery and settlement negotiations precluded plaintiffs from discovering relevant facts, plaintiff acted diligently by seeking leave to file an amended complaint only two months after acquiring information)). In contrast, a "party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Perfect Pearl*, 889 F. Supp. 2d at 457 (internal quotation marks and citation omitted).

The Zohar Funds bear the burden of demonstrating good cause. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). They argue that their new counterclaims are premised upon allegations that the Portfolio Companies' drawn-down funds were being covertly held in PPAS' bank accounts, that repayments from the Portfolio Companies were being maintained in PPAS' accounts instead of being remitted to the Zohar Funds, and that PPAS was acting as a "shadow" collateral manager, among others. They say the bank statements, which PPAS had vigorously objected to producing at all and ultimately produced in redacted format, also do not clearly depict the "shadow revolver" transactions alleged in the TAC.[4] While it is true, as PPAS points out, that Zohar Funds knew some of the information relevant to their counterclaims, the Zohar Funds have presented sufficient facts demonstrating that they did not know all of the facts that could form the basis of their new claims until about a month ago. Accordingly, this Court concludes that the Zohar Funds acted diligently in seeking leave to amend shortly after they learned the fact basis for its proposed counterclaims through depositions that occurred in October 2016.

### B.  *Delay And Prejudice Under Rule 15*

PPAS also argues that the Zohar Funds' motion for leave to amend should be denied under Rule 15 because the proposed amendment is delayed and prejudicial to PPAS. It is well established that "[m]ere delay . . . absent a showing of bad faith or undue prejudice[ ] does not provide a basis for a district court to deny the right to amend." *Kreisler v. P.T.Z. Realty, L.L.C.,*

---

[4] Neither party has submitted a Trustee bank statement for the Court's review. Based on counsel for the Zohar Funds' representations at oral argument, however, this Court understands that the statements were not available for after early 2016 and did not depict the level of detail that would have allowed the Zohar Funds to understand the basis for activity within PPAS' account.

318 F.R.D. 704, 706 (S.D.N.Y. 2016) (citation and internal quotation marks omitted). For the

reasons set forth in the prior section, this Court finds that the Zohar Funds did not delay in

asserting their new counterclaims once the factual basis for such claims became apparent.

PPAS bears the burden of showing of undue prejudice under Rule 15. *Soroof Trading*

*Development Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 152 (S.D.N.Y. 2012) (citations

omitted). To make this showing, it must demonstrate the amendments will cause it "to expend

significant additional resources to conduct discovery and prepare for trial or significantly delay

the resolution of the dispute." *Mason Tenders Dist. Council of Greater N.Y.*, 318 F.R.D. at 38

(citing *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010)).

Mere allegations that an amendment "will require the expenditure of additional time, effort, or

money do not themselves constitute undue prejudice." *Kreisler*, 318 F.R.D. at 706-07 (holding

that under Second Circuit precedent, "the fact that the opposing party will have to undertake

additional discovery, standing alone, does not suffice to warrant denial of a motion to amend a

pleading").

Here, PPAS asserts that if amendment is allowed, it will have to engage in additional

costly and time-sensitive document review, promulgate additional discovery requests to the

Zohar Funds, spend more time preparing its witnesses for deposition, and re-depose certain

witnesses in order to defend itself against the new counterclaims. While the proposed

counterclaims may require additional discovery, any further discovery will be fairly limited

given the discrete nature of the new counterclaims. Indeed, the Zohar Funds have represented

that the additional discovery they intend to seek likely will be limited to five centrally located

categories of documents, one of which is unreacted versions of the bank statements that PPAS

previously produced in redacted form, and that they intend to pursue this discovery even if their motion to amend is denied.

Given the volume of discovery already conducted in this case, as well as the amount of money involved in the underlying dispute, the time and resources needed to conduct additional discovery into the proposed counterclaims is not so burdensome as to constitute grounds for denying leave to amend. While PPAS points out that fact discovery should be concluded by now, it is clear that discovery is still ongoing. For example, there are still remaining discovery disputes that will need to be addressed irrespective of whether the Zohar Funds are allowed to amend their counterclaims, including potential issues related to both party and non-party discovery. The Court also notes that only four depositions have occurred thus far in this case and that it appears both sides intend to take additional depositions, including the deposition of Ms. Tilton. Expert discovery also remains to be completed, and neither party has filed a motion for summary judgment. Under such circumstances, the Court finds that delay and prejudice do not present a valid basis to deny the Zohar Funds' motion for leave to amend. *See Hanlin v. Mitchelson,* 794 F.2d 834, 841 (2d Cir. 1986) (holding that it was not prejudicial to allow amendment of a pleading even after summary judgment had been filed where the new claims arose out of the same operative facts as the initial claims); *see also Lin v. Toyo Foods, Inc.*, No, 12-cv-7392 (KMK), 2016 WL 4502040, at *3 (S.D.N.Y. Aug. 26, 2016) (holding that plaintiff did not delay in seeking amendment where summary judgment motions had not yet been filed and a trial date has not been set).

### C. *Futility Of New Causes Of Action Under Rule 15*

PPAS next argues that the Zohar Funds' proposed amendments are futile and should not be permitted. Proposed amendments are futile when they would fail to "state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). Thus, in reviewing the proposed amended pleading the Court must determine whether the complaint contains sufficient facts, which if taken as true, state new claims for relief that are plausible on their face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### 1. *Count III: Breach Of Contract*

Count III of the TAC alleges that PPAS breached the terms of the Credit Agreement by failing to comply with AMZM's directives to provide the Zohar Funds with all funds held by PPAS for the benefit of the defaulted Portfolio Companies after the declaration of an Event of Default. In support of this claim, the Zohar Funds rely on a provision in the Credit Agreement stating that, upon receipt of a notice of default, "[t]he Agent shall take such action with respect to such Default or Event of Default as shall be reasonably directed by the Lenders . . . ." (Doc. No. 159-2 § 9.10.) They also cite Section 8.2(c) of the Credit Agreements, which provides that upon and after an Event of Default, "[t]he Agent shall, at the request of . . . the Required Lenders, . . . exercise any right of counterclaim, setoff, banker's lien or otherwise which it might have with respect to money or property of the Borrower." (Doc. No. 159-2 § 8.2(c).)

PPAS contends that it was not required to immediately remit Portfolio Company funds

to the Zohar Funds under the terms of the Credit Agreements. PPAS points to provisions of the Credit Agreement that it claims gives the Agent the right to "set off" or appropriate Portfolio Company funds for expenses incurred or anticipated to be incurred by the Agent. However, this Court finds that the provisions cited by PPAS do not definitively establish that Count III fails as a matter of law under the Rule 12(b)(6) standard. The Zohar Funds have cited to facts plausibly supporting their claim. *See AEP Enery Servs. Gas Holding Co.*, 626 F.3d at 726. Accordingly, PPAS has failed to meet its burden of establishing that the proposed amendment would be futile with respect to Count III. *See Innis v. City of New York*, No. 17-cv-323 (LTS) (HBP), 2017 WL 4797904, at *1 (S.D.N.Y. Oct. 24, 2017) ("[t]he party opposing the amendment has the burden of demonstrating that leave to amend would be futile."). The Zohar Funds' motion for leave to amend is hereby granted with respect to Count III.

2.      *Count V: Breach Of Contract*

In Count V of the TAC, the Zohar Funds allege that PPAS breached the Credit Agreements by failing to "'promptly distribute' all payments received in respect to the loans of the Lenders, including the Zohar Funds."[5] (TAC ¶ 92.) In particular, the Zohar Funds allege that PPAS has been collecting payments from the Portfolio Companies on the Draw Down Loans since March 2016, but has failed to remit any of those repayment amounts to the Zohar Funds.

PPAS argues that this proposed breach of contract claim is foreclosed by the terms of the Credit Agreements. It asserts that Section 9.5 authorizes the Agent to "accept deposits from" and "generally engage in any kind of banking, trust, trust, financial advisory or other

---

[5] The Zohar Funds allege that PPAS' conduct violates Section 2.14(d) of the Credit Agreements, which states: "[t]he Agent shall promptly distribute to each Lender . . . such Lender's applicable Pro Rata Share of all payments and prepayments of principal and interest due hereunder . . . ." (Doc. No. 159-2 § 2.14(d).)

business with the [Portfolio Companies]." (Doc. No. 159-2 § 9.5.) PPAS states that its retention of the Portfolio Companies' Funds was merely an exercise of its authority under Section 9.5. It also argues that, even if it accepted the funds in its capacity as Agent, the Portfolio Companies did not provide notice that the repayment funds were intended to be applied to the principal lent under the Draw Down Loans.

PPAS' arguments fail to carry its burden of establishing that the proposed Count V is futile. Determining whether PPAS was in fact acting as Agent or as a banking repository, or whether the funds transferred from the Portfolio Companies to PPAS' account were intended be repayments of loan principal, would require the Court to consider extraneous facts beyond what is pled in the TAC, which is impermissible on a motion to amend. *See, e.g., Lin*, 2016 WL 4502040, at *5 (explaining that in evaluating the futility of a proposed amendment, courts "cannot consider materials outside of the proposed amended complaint"). This Court accordingly finds that the Zohar Funds have plausibly pled a claim for breach of contract and grants their request for leave to amend with respect to Count V.

      3.     *Count VII: Breach Of The Implied Covenant Of Good Faith And Fair Dealing*

In Court VII of the TAC, the Zohar Funds allege that PPAS breached the implied covenant of good faith and fair dealing by undertaking deliberate efforts to deprive the Zohar Funds of the benefit of their bargain under the Credit Agreements.

"Under New York law, a covenant of good faith and fair dealing is implicit in all contracts during the course of contract performance." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007); *see also M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990). This covenant prohibits parties to a contract from doing "anything which will

have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Tractebel Energy Mktg., Inc*., 487 F.3d at 98 (citing *Dalton v. Educ. Testing Serv*., 87 N.Y.2d 384, 389 (1995)).

New York law, however, "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *ARI & Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (Marrero, D.J.) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)); *see also FCOF UB Secs. LLC v. MorEquity, Inc.*, No. 09-cv-0551 (VM), 2009 WL 3241538, at *7 (S.D.N.Y. Sept. 29, 2009) (New York law "requires dismissal of an implied covenant claim where the claim derives from the same set of facts as a breach of contract claim.").

Here, the Zohar Funds' claim for breach of the implied covenant of good faith and fair dealing is premised on PPAS' alleged failure to act in accordance with the terms of the Credit Agreements. The Zohar Funds allege that PPAS deprived them of the benefits of the Credit Agreements by covertly holding Portfolio Company funds in its bank accounts, failing to forward repayments on the Draw Down Loans to the Zohar Funds, and refusing to remit money held in PPAS' accounts on behalf of the defaulted Portfolio Companies to the Zohar Funds even after an Event of Default and a demand for the release of the funds. These allegations are nearly identical to those advanced in support of Counts III and V for breach of contract. *Compare* TAC ¶¶ 78-81 (alleging that PPAS breached the Credit Agreements by failing to remit money held on behalf of the Portfolio Companies to the Zohar Funds after an Event of Default) and ¶¶ 92-94 (alleging that PPAS breached the Credit Agreements by collecting payments from the Portfolio

Companies on the Draw Down Loans, but not distributing those payments to the Zohar Funds) *with* ¶¶ 105-108 (alleging that the same conduct constituted a breach of the covenant of good faith and fair dealing).

The Zohar Funds' allegations that PPAS breached the covenant of good faith and fair dealing by "usurp[ing] the role of the Zohar Funds' chosen collateral manager" (TAC ¶ 106) are also insufficient to render this claim distinct from their breach of contract claim. This is because the alleged wrongful conduct that underlies the contract causes of action—that PPAS maintained a "secret revolver" loan system for the Portfolio Companies—is the same. *See Gitman v. Pearson Educ., Inc.*, No. 14-cv-8626 (GBD), 2015 WL 5122564, at *5 (S.D.N.Y. Aug. 31, 2015) ("an implied covenant claim is not distinct from a concurrently pled breach of contract claim unless it is based on different factual allegations.").

Because the Zohar Funds' proposed claim for breach of the implied covenant of good faith and fair dealing is premised upon the same underlying factual allegations as their claims for breach of contract, this Court recommends that leave to amend be denied as futile with respect to Count VII.

    4.    *Counts IX and X: Money Had And Received And Constructive Trust*

Finally, the Zohar Funds seek leave to add two new equitable causes of action for money had and received and a constructive trust. Both of these claims are premised upon allegations that PPAS has been holding funds in its accounts that were loaned to the Portfolio Companies by the Zohar Funds, has failed to remit the Portfolio Companies' repayments on the Draw Down Loans to the Zohar Funds, and has refused to transfer the money held on behalf of the Portfolio Companies to the Zohar Funds even after an Event of Default. These claims arise out of the

same factual allegations, and seek the same damages, as the Zohar Funds' breach of contract claims.[6] As such, they are duplicative and should be dismissed. *See Staudinger+Franke GMBH v. Casey*, No. 13-cv-6124 (JGK), 2015 WL 3561409, at *9 (S.D.N.Y. June 8, 2015) (money had and received claim is duplicative when the claimed damages are the same as the damages incurred as a result of a breach of contract); *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 107 (S.D.N.Y. 2013) (dismissing constructive trust claim because it "arises from the same operative facts as [the] plaintiff[']s[] contract breach claim" and collecting other cases holding the same).

Claims for money had and received and constructive trust are equitable claims that cannot be asserted where there is a valid agreement addressing the same subject matter. *See Kalimantano GMBH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 416 (S.D.N.Y. 2013) (the existence of a valid and enforceable contract governing the dispute precludes a claim for money had and received); *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998) (same); *N. Shipping Funds I, LLC*, 921 F. Supp. 2d at 107 (observing that a constructive trust should not be imposed unless there is no adequate remedy in law and damages under a contract will provide a sufficient legal remedy). Here, while the parties vigorously dispute the how the Credit Agreements should be interpreted, there is no question that the Agreements are enforceable and control the rights and obligations of the parties.

Accordingly, this Court recommends that the Zohar Funds' motion for leave to add counterclaims for monies had and received and for a constructive trust be denied as futile.

---

[6] At oral argument, counsel for the Zohar Funds acknowledged that these claims were duplicative of their breach claims.

**III.  DISCOVERY DISPUTES**

At the last conference, the parties indicated that there were discovery disputes they wish to raise with the Court. Within 5 days of this decision, counsel for the parties are directed to meet-and-confer about any remaining disputes, including discussing whether either side's position has changed in light of this Report & Recommendation and Opinion. If the parties are unable to resolve their disputes, the party seeking discovery shall file a letter requesting a pre-motion conference by December 15. Within 5 days thereafter, the party opposing discovery shall file a response. These letters shall be no more than 10 pages. The Court will promptly schedule a conference to address the disputed issues.

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court recommends denying the Zohar Funds' motion for leave to amend to add claims for breach of the implied covenant of good faith and fair dealing, money had and received, and a constructive trust. The Court grants the Zohar Funds' motion for leave to amend to add the two new causes of action for breach of contract against PPAS. The Zohar Funds shall file their TAC, modified in accordance with this decision, by December 18, 2017.

**SO ORDERED.**

Date:   December 4, 2017
        New York, New York

_Katharine H Parker_

KATHARINE H. PARKER
United States Magistrate Judge

**NOTICE**

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections to the portions of this Report & Recommendation that recommend denying the Zohar Funds' request to amend, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure (*i.e.,* until December 18, 2017). *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**If any party files written objections to this Report and Recommendation, the opposing party may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Victor Marrero at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Marrero. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**