UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PATRIARCH PARTNERS AGENCY SERVICES, LLC,

                              Plaintiff,

                      -against-                                          **ORDER**

ZOHAR CDO 2003-1, LTD. et al.,                           16-CV-04488 (VM) (KHP)

                              Defendants.

------------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE.**

      Presently before the Court is a motion by Defendant/Counterclaim Plaintiff pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Bankruptcy Court in Delaware. (ECF No. 249.) For the reasons discussed below, the motion to transfer is denied.

## BACKGROUND

      This case involves a dispute between Patriarch Partners Agency Services, LLC ("PPAS") and funds (the "Zohar Funds") for which PPAS served as Administrative Agent under various credit agreements. The Zohar Funds are special purpose vehicles that issue securities in the form of collateralized loan obligations secured by the funds' assets. Certain of the Zohar Funds are Delaware limited liability companies and others are Cayman Island companies, but all of their principal places of business are New York. PPAS is a Delaware limited liability company with its principal place of business in New York. Affiliates of PPAS served as Collateral Managers for the funds. See Z*ohar CDO 2003-1, LLC v. Patriarch Partners, LLC,* 2016 WL 6248461, at *1 (Del. Ch. Oct. 26, 2016), *aff'd*, 165 A.3d 288 (Del. 2017) (describing history of relationship of and litigation between various Patriarch entities and the Zohar Funds).

1

On or about February 5, 2016, affiliates of PPAS gave written notice that they would resign as Collateral Manager for the funds in March 2016 upon appointment of a successor. Alvarez & Marsal Zohar Management LLC ("AMZM") was identified as a successor and entered into collateral management agreements with the Zohar Funds.  The transition did not go smoothly and resulted in the Zohar Funds suing Patriarch Partners LLC in Delaware for breach of contract for failing to produce certain books and records to the funds.  Zohar later added PPAS as a defendant in that action.  Zohar won that action, and Patriarch was required to produce certain documents and information.  *Id.* at *18.

During the pendency of the 2016 Delaware action, on June 14, 2016, the Zohar Funds purported to terminate PPAS as Administrative Agent for the funds and appoint Alvarez & Marsal Zohar Agency Services, LLC ("AMZAS") as successor Administrative Agent.  The purported termination resulted in PPAS filing this action.  Specifically, on June 15, 2016, PPAS sued the Zohar Funds and AMZAS in New York state court asserting that its appointments were irrevocable, seeking declaratory relief, an injunction prohibiting its termination as Administrative Agent, and damages in the form of fees due to it as Administrative Agent.  (*See* ECF Nos. 1, 46.)  The Zohar Funds removed the action to this Court.  The Zohar Funds contend any irrevocable appointment is unenforceable as a matter of law.  In addition to defending against the claims of PPAS, in January 2017, the funds lodged counterclaims asserting, among other things, that PPAS breached its contractual obligations to the funds, and seeking a declaration that they properly terminated PPAS and damages for PPAS's alleged failure to deliver to the Zohar Funds certain notices, documents, requests, demands and monies concerning and/or from borrowers under the credit agreements.  (ECF No. 68.)

For approximately two years, the parties engaged in motion practice and extensive discovery in this District, including document discovery, third-party discovery, and several depositions.

On March 11, 2018, the Zohar Funds filed for chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware.  As a result of these proceedings ("Bankruptcy Proceedings"), this action was automatically stayed in accordance with 11 U.S.C. § 362.  (*See* ECF No. 205.)  On May 21, 2018, the Bankruptcy Court approved a settlement among the debtors and various creditors and affiliated entities, including PPAS.  That settlement involved monetization of certain assets and involved a lengthy process.  On June 21, 2022, the Bankruptcy Court confirmed the Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code.

During the pendency of the Bankruptcy Proceedings and in connection with a settlement, Ankura Trust Company LLC ("Ankura") replaced PPAS as Administrative Agent to several portfolio company borrowers.  As part of the settlement and monetization process, other debt interests of the Zohar Funds were monetized or abandoned.  Also, as a result of Ankura's appointment, PPAS dismissed the claims in this action against AMZAS.  (ECF No. 246.)

In March 2020, the Zohar Funds initiated an adversary proceeding related to the chapter 11 proceeding in the Bankruptcy Court in Delaware ("Adversary Proceeding").  The Adversary Proceeding involves claims against PPAS and various of its affiliates as well as a number of other entities and persons who are not parties to the instant litigation.  It involves upwards of 42 claims and counterclaims.  It is this Court's understanding that discovery in the Adversary Proceeding case is expected to be extensive and to be completed in November 2023.

On August 1, 2022, the Bankruptcy Court issued an order providing for the transfer of the Zohar Funds' litigation assets, including the claims and counterclaims in this action, to two litigation trusts and the appointment of a Trustee for the litigation trusts. Accordingly, the Trustee has now been substituted for the Zohar Funds as Defendant and Counterclaim Plaintiff in this action. (ECF No. 236.) On September 13, 2022, the Bankruptcy Court in Delaware closed the Bankruptcy action, bringing an end to the automatic stay.

As this case stands now, PPAS seeks certain fees owed to it for the period between when the Zohar Funds purported to terminate its services as Administrative Agent and the time it ceased to be Administrative Agent. Counterclaims for money damages, fees and costs related to PPAS's alleged conduct and contractual breaches also still remain. The parties in this case have agreed with the parties in the Delaware Adversary Proceeding to coordinate or share discovery, to the extent it overlaps, in the two proceedings.

Through the instant motion, the Trustee seeks to transfer this case to the Delaware Bankruptcy Court in which the Adversary Proceeding is pending.

**LEGAL STANDARD**

A federal civil case may be transferred to any other district where it might have been brought in the first instance or to any other district to which all parties consent "for the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The transfer analysis thus requires first, an assessment of whether the action could have been brought in the proposed transferee court, and second, whether transfer is appropriate. *Megna v. Biocomp Labs. Inc.*, 220 F. Supp. 3d 496, 497. (S.D.N.Y. 2016). The second step requires analysis of the following factors: the convenience of witnesses and the parties, the locus of

operative facts, the location of relevant documents and relative ease of access to sources of proof, the availability of process to compel the attendance of unwilling witnesses, the court's familiarity with governing law, the relative financial means of the parties, and the weight afforded to the plaintiff's choice of forum. *Id.* at 498 (citation omitted). Where the parties have a contractual forum-selection clause, that clause generally should control, and the Court should not consider the parties' so-called private interests in its analysis. *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 63 (2013).

The movant bears the burden of proving by "clear and convincing evidence" that transfer is appropriate. *N.Y. Marine & Gen. Ins. Co. v. LaFarge N. Am., Inc.*, 599 F.3rd 102, 113-14 (2d Cir. 2010).

## ANALYSIS

Defendant's motion falters at the first step of the transfer analysis. That is, PPAS could not have brought this action in Delaware in the first instance. All of the initial defendants in this action would not have been subject to personal jurisdiction in the District of Delaware at the time this action was filed. Specifically, three of the Zohar Fund defendants are Cayman Islands companies with their principal places of business in New York. Thus, they are not subject to general jurisdiction in Delaware. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Additionally, none of the initial defendants were subject to specific jurisdiction in Delaware because none of the conduct alleged in the claims related to or arose out of their contacts with Delaware. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Rather, the conduct occurred in New York – the principal place of business for PPAS, the Zohar Funds, and AMZAS.

The Trustee argues that PPAS could have originally sued the funds in Delaware because they consented to jurisdiction in Delaware by litigating related matters there, including the litigation involving Patriarch's duties as Collateral Manager and the bankruptcy proceeding. This argument is unpersuasive because the Second Circuit has held that "[a] party's consent to jurisdiction in one case . . . extends to that case alone" and does not open the party up to other lawsuits in the same jurisdiction where the other party does not consent and no other basis for jurisdiction exists. *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Laura in Admmistrazione Straordinaria*, 937 F.2d 44, 50 n.5 (2d Cir. 1991).  PPAS does not consent to litigate this case in Delaware.

Notably, the relevant credit agreements out of which the claims and counterclaims in this action arise also contain forum selection clauses designating New York as the forum to bring "any Action with respect to any Credit Document." Croscill Agmt. 10.2(a).  Indeed, subsection (a) of the relevant provision says that any such action "may be brought only in the New York State courts sitting in New York County or the federal courts of the United States of America for the Southern District of New York and sitting in New York County." *Id.*  While it is true that subsection (b) states that each party to the credit agreement "accepts for itself and in respect of its property, generally and unconditionally, the non-exclusive jurisdiction of" the New York state and federal courts, in subsection (c) the parties also "irrevocably waive[] any objection, including, without limitation, any objection to the laying of venue or based on the grounds of forum non conveniens, which it may now or hereafter have to the bringing of any Action" in the New York state and federal courts in New York County.  Croscill Agmt. 10.2.  The waiver of objection to jurisdiction in New York County requires the provision to be construed as

6

a mandatory forum selection clause mandating that this case be brought in New York County. *ICICI Bank Ltd. v. Essar Global Fund Ltd.*, 565 B.R. 241, 253 (S.D.N.Y. 2017); *Akers Biosciences, Inc. v. Martin*, 2015 WL 1054971, at *4 (S.D.N.Y. Mar. 10, 2015). The Zohar Funds argue that subsection (b) renders the jurisdiction in New York County non-exclusive, but this interpretation would not give effect to the other provisions of Section 10.2 of the agreement stating that "any Action with respect to any Credit Document" may "only" be brought in New York County and waiving objections to venue here. Such a construction would violate established contract interpretation principles. *AmTrust N. Am., Inc. v. KF&B Inc.*, 2020 WL 6306444, at *30 (S.D.N.Y. Oct. 27, 2020) (contracts should be interpreted so as to give effect to all of their provisions).

Given the forum selection provision, PPAS had to commence an action in New York County because its claims involved an alleged breach of a provision of the credit agreements. It would have violated this provision by bringing the action in Delaware. Likewise, under the provision, the Zohar Funds waived any objection to litigation in this forum. Similarly, because the Zohar Funds' counterclaims likewise involve breach of the credit agreements, they too were obliged to bring them only in the state or federal courts in New York County. If they had brought the counterclaims in Delaware, PPAS could have invoked the forum selection provision to argue Delaware was an inappropriate venue.

In light of the mandatory forum selection clause designating New York as the appropriate forum for this action, the Court must find that all factors relating to the parties' private interests weigh against transfer to Delaware. *Alt. Marine*, 571 U.S. at 64.

Although the Court may consider arguments about the public-interest factors in the circumstances presented, the United States Supreme Court has stated that such factors "will

7

rarely" prevail in favor of transfer. *Id.* at 51. The rationale for this rule is that the "interest of justice" is generally deemed to be served by "holding parties to their bargain." *Id.* at 66. The public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law. *Id.* at 62 n.6 (citation omitted). These factors do not weigh in favor of transfer in this case.

First, both New York and Delaware are busy districts. *See Encompass Aviation, LLC v. Surf Air Inc.*, 2018 WL 6713138, at *10 (S.D.N.Y. Nov. 30, 2018) (finding "no evidence of administrative concerns" where movant sought transfer to California because "[t]hey are equally busy in California"); *see also* https://www.uscourts.gov/statistics/table/na/civil-justice-reform-act-cjra/2021/03/31 (showing that as of March 2022, this district had fewer motions per judge pending for more than six months than the District of Delaware). Thus, the administrative difficulties are not materially different in Delaware. This factor is neutral. Second, the issues here involve conduct that occurred in New York by parties with principal places of business in New York and at least some key witnesses in New York. In contrast, none of the conduct at issue took place in Delaware. Thus, the local interest factor weighs against transfer. Third, while a Delaware Court can certainly decide matters of New York law (which all parties agree applies here), this Court is equally competent to do so and is in fact the district at home with the law. Thus, this factor weighs against transfer. In sum, the public factors weigh against transfer.

## CONCLUSION

For the reasons discussed above, Defendants have failed to demonstrate by clear and convincing evidence that transfer to Delaware is warranted. Accordingly, the motion to transfer is denied.

**The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 249.**

**SO ORDERED.**

Dated: February 24, 2023
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge