**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/11/2026

PATRIARCH PARTNERS AGENCY SERVICES, LLC,

                    Plaintiff,

        - against -

ZOHAR CDO 2003-1, LTD., ET AL.,

                  Defendants.

**16-CV-4488 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

The Court has reviewed the motions *in limine* filed by plaintiff Patriarch Partners Agency Services, LLC ("PPAS") and by defendant David Dunn as Trustee for the Zohar Litigation Trust-A (the "Trust").

PPAS filed one motion *in limine*, which contained four discrete subparts. (See "PPAS's Motion" or "PPAS's Mot.," Dkt. No. 380.) PPAS's Motion makes the following requests:

(1) to exclude the testimony of Elizabeth LaPuma on subjects for which she previously invoked the attorney-client privilege at her deposition ("PPAS's Motion 1.1"). PPAS's Motion 1.1 is hereby **GRANTED IN PART** and **DENIED IN PART.**

(2) to exclude the testimony of David Dunn on topics for which he lacks personal knowledge ("PPAS's Motion 1.2"). PPAS's Motion 1.2 is hereby **GRANTED IN PART** and **DENIED IN PART.**

(3)   to exclude allegations of a "scheme" by non-parties and PPAS affiliated entities to deprive the Zohar Funds of cash ("PPAS's Motion 1.3"). PPAS's Motion 1.3 is hereby **DENIED**.

(4)   to exclude materials from the "Books and Records Action," Zohar CDO 2003-1 v. Patriarch Partners, LLC, C.A. No. 12247-VCS (Del. Ch.) ("PPAS's Motion 1.4"). PPAS's Motion 1.4 is **GRANTED**.

The Trust filed two motions *in limine*, which make the following requests:

(1)   to exclude the following litigation exhibits: PX-527, PX-278, PX-528, and PX-500 ("Trust's First Motion," Dkt. No. 374). The Trust's First Motion is **GRANTED IN PART** and **RESERVED FOR TRIAL IN PART**.

(2)   to preclude PPAS from introducing certain damages evidence and computations ("Trust's Second Motion" Dkt. No. 378, collectively with the Trust's First Motion, the "Trust's Motions"). The Trust's Second Motion is **DENIED IN PART** and **RESERVED FOR TRIAL IN PART**.

## I.    LEGAL STANDARDS

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of the trial on the relevance of certain forecasted evidence, as to issues

that are definitely set for trial, without lengthy argument at, or interruption of, the trial." <u>Palmieri v. Defaria</u>, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted). "A court's determination of a motion in limine is preliminary and may be subject to change as the case unfolds." <u>State v. Deutsche Telekom AG</u>, 419 F. Supp. 3d 783, 787 (S.D.N.Y. 2019).

## II.  <u>ARGUMENT</u>

### A. <u>PPAS'S MOTION 1.1: TESTIMONY OF ELIZABETH LAPUMA</u>

PPAS's Motion 1.1 seeks to exclude testimony of Elizabeth LaPuma, the former Managing Director of Alvarez & Marsal, regarding subjects for which she allegedly invoked the attorney-client privilege at her deposition. The parties agree that the Trust should not be allowed to elicit testimony from LaPuma regarding topics over which she previously asserted privilege. The parties, however, appear to differ as to how much of LaPuma's testimony should be excluded. PPAS asks the Court to prohibit LaPuma from testifying as to any topic for which she asserted privilege during her deposition. The Trust argues that this is overbroad and would prevent LaPuma from testifying as to the underlying factual matters on those topics that she also spoke about during her deposition.

3

The Second Circuit has long held that "the attorney-client privilege cannot at once be used as a sword and a shield," meaning "[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991). The sword-and-shield doctrine prevents a party that invoked the attorney-client privilege from cherry-picking which facts to later disclose at trial. See id.; see also In re Residential Cap., LLC, 491 B.R. 63, 68 (Bankr. S.D.N.Y. 2013).

While LaPuma repeatedly invoked the attorney-client privilege during her deposition, she also testified as to underlying facts. The Trust states that it "intends to elicit the same factual testimony at trial—not the legal advice." ("Trust's Opp.," Dkt. No. 390 at 17.)[1] Since the Trust states it will not be cherry-picking evidence it hid using the attorney-client privilege but is instead seeking to elicit testimony for factual matters that LaPuma already discussed during her deposition, the Court will not prevent LaPuma from testifying on those factual matters. However, "the Court is prepared to exclude any testimony or evidentiary presentations by the Defendants at trial if that same

---

[1] Page numbers in this Decision and Order reference the document's ECF page number.

4

testimony or evidence was withheld from Plaintiffs during discovery based on attorney-client privilege." Cary Oil Co. v. MG Ref. & Mktg., Inc., 257 F. Supp. 2d 751, 761 (S.D.N.Y. 2003). PPAS's Motion 1.1 is therefore **GRANTED IN PART** to the extent that LaPuma will not be allowed to testify as to matters for which she invoked the attorney-client privilege and did not provide factual testimony but is **DENIED IN PART** to the extent that the Court will allow her to testify to the underlying facts she discussed in her deposition.

B. PPAS'S MOTION 1.2: TESTIMONY OF DAVID DUNN

PPAS seeks to preclude David Dunn ("Dunn"), the Litigation Trustee for the Trust, from testifying as to subjects for which PPAS alleges he has no personal knowledge, including Zohar Funds' damages and wind-downs. The Trust states that it does not intend to elicit any testimony for which Dunn does not have personal knowledge.

Pursuant to FRE 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. A lay witness can provide testimony only to the extent that it is "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed R. Evid. 701.

As required by FRE 602, the Court will allow Dunn to testify only on the topics for which he has personal knowledge. Because Dunn became the Litigation Trustee in August 2022, both parties agree that he has no personal knowledge of events from 2016 to 2018 that underly the claims in this matter. (See Trust's Opp. at 15; "PPAS's Reply," Dkt. No. 401 at 9.) PPAS argues that Dunn should not be allowed to testify regarding the Trust's damages because he did not provide answers to damages-related questions during his deposition. (See Pls. Reply at 9-10.) At the same time, PPAS states that it "should nevertheless be permitted to cross-examine Mr. Dunn on the issue of the Trust's recoveries subsequent to the events at issue as they relate to the Portfolio Companies at issue here, as that information goes to PPAS's damages defense and, to the extent Mr. Dunn has personal knowledge on that topic, he can answer questions about it." (Id. at 9 n.1.) PPAS cannot have it both ways. Dunn will be allowed to testify regarding the Trust's damages to the extent he has personal knowledge.

However, pursuant to FRE 701, the Court will prohibit Dunn from testifying about wind-downs to the extent that his testimony relies on his specialized knowledge of winding down the companies generally, rather than his personal knowledge of winding down the specific companies at issue in this

6

action. See Bank of China N.N. Branch v. NBM LLC, 359 F.3d 171, 183 (2nd Cir. 2004) ("[T]o the extent that [the witness's] testimony [is] not a product of his [own] investigation, but rather reflected specialized knowledge he has because of his extensive experience [in the field], its admission pursuant to Rule 701 [would be in error]."). PPAS's Motion 1.2 is therefore **GRANTED IN PART** to the extent that Dunn will be prohibited from testifying as to topics for which he does not have personal knowledge but is **DENIED IN PART** in that the Court will allow Dunn to testify as to the Trust's damages to the extent he has personal knowledge thereof.

C. PPAS'S MOTION 1.3: EXCLUSION OF "SCHEME" ALLEGATIONS AND EVIDENCE

PPAS seeks to preclude any allegations or the introduction of evidence by the Trust alleging a "scheme" by Lynn Tilton ("Tilton"), Manager of PPAS and principal and owner of Patriarch Partners, LLC ("Patriarch"), and entities other than PPAS to deprive Zohar Funds of cash.

This "scheme" evidence is relevant to showing whether PPAS acted with willful misconduct or gross negligence, an issue the Court reserved for trial. (See Dkt. No. 362 at 85; Fed. R. Evid. 401.) Under New York law, to prove willful misconduct, a party's "proffered reasons for not performing under the agreement" must be "baseless and a pretext." Harvest

Town Vill. Vestavia Hills LLC v. Tvillage Tulsa LP, 116 A.D.3d 599, 599 (2014). To show pretext, the Trust must provide evidence of PPAS's motive. This "scheme" evidence is therefore relevant because it allegedly shows PPAS's motivation for failing to follow default instructions and provide certain financial information and funds. The evidence's probative value is not substantially outweighed by "unfair prejudice," because it is highly probative regarding the live issue of PPAS's willfulness. Fed. R. Evid. 403. Additionally, the Court finds that any fears of a trial within a trial to be unfounded, as the Court may "restrict the length and scope" of the inquiry into the facts of the alleged "scheme" to "avoid the possibility of a trial within a trial on this issue." United States v. Nelson, 365 F. Supp. 2d 381, 391 (S.D.N.Y. 2005).

D. PPAS'S MOTION 1.4: EXCLUDING THE "BOOKS AND RECORDS ACTION"

PPAS seeks to exclude materials from a related adversarial action that the Zohar Funds initiated in the Court of Chancery in Delaware seeking the books and records of Patriarch Managers and Partners, LLC (the "Books and Records Action"). Specifically PPAS seeks to prevent the Trust from introducing (i) the Books and Records Post-Trial Opinion; (ii) the February 28, 2017 Books and Records Special Master

Report; and (iii) the May 11, 2017 Books and Records Special Master Report (the "Books and Records Materials") because they are inadmissible hearsay, and should be excluded pursuant to FRE 401, 402, and 802. ("Trust's Damages Mem. of Law," Dkt. No. 383 at 15-20.)

The Court agrees with PPAS that the Books and Records Materials should be excluded as irrelevant. "[C]ourts generally exclude evidence of other related lawsuits." Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A., 860 F. Supp. 2d 251, 254-55 (S.D.N.Y. 2012). While PPAS was at one point a party to the Books and Records Action, the Books and Records Materials are not relevant to PPAS, as Zohar Funds chose to withdraw all claims against PPAS prior to the Books and Records Action going to trial. Under FRE 401, the Books and Records Materials do not have the tendency to make it more or less probable that PPAS did not produce documents, as the materials pertain to legal entities other than PPAS. Accordingly, the Books and Records Materials are irrelevant and are therefore inadmissible under FRE 402. PPAS's Motion 1.4 is therefore **GRANTED**.

E. THE TRUST'S FIRST MOTION: EXCLUDING LITIGATION EXHIBITS

The Trust seeks to exclude the following documents on the grounds that they are inadmissible as hearsay and do not qualify as summary exhibits under FRE 1006: PX-527 (the old

PX-406, the "Transactions Spreadsheet"), PX-278, (the old PX-213, the "PPAS Agency Fee Invoices Spreadsheet"), PX-528 (the old PX-407, the "Patriarch Partners, LLC Spreadsheet"), and PX-500 (the old PX-383, the "Bankruptcy Court Chart," and collectively with PX-527, PX-278, and PX-528, the "Litigation Exhibits"). PPAS argues that the Litigation Exhibits are all admissible as summary exhibits pursuant to FRE 1006. Additionally, PPAS argues that the PPAS Agency Fee Invoices Spreadsheet, the Patriarch Partners, LLC Spreadsheet, and the Bankruptcy Court Chart are also independently admissible as business records.

FRE 1006 allows a "summary, chart, or calculation" to be used "to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court," but only where the proponent "make[s] the underlying originals or duplicates" of the summarized documents "available for examination or copying, or both, by other parties at a reasonable time and place." Fed. R. Evid. 1006. Summary exhibits are admissible only if "the underlying documents also constitute admissible evidence and are made available to the adverse party." Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53 (2d Cir. 1993). A Summary exhibit must also be accurate. See United States v. Citron, 783 F.2d 307, 316 (2d Cir. 1986) ("Summary charts should not be admitted

unless a proper foundation is established connecting the numbers on the chart with the underlying evidence.").

Parties seeking to admit summary exhibits must "[lay] the foundation for the data's admission and establish[] [that] the summary charts [are] accurate representations of [the] data." Gem Fin. Serv., Inc. v. City of New York, No. 13-CV-1686, 2023 WL 4850523, at *12 (E.D.N.Y. July 28, 2023). While the Trust alleges that PPAS has not yet established that the Litigation Exhibits are accurate, PPAS notes that it is prepared to provide an affidavit, and if necessary, provide additional testimony, attesting to the documents' authenticity and that they accurately reflect the underlying documents. (See "PPAS Lit. Ex. Opp.," Dkt. No. 392 at 20.) Accordingly, the Court will reserve its ruling on whether the Litigation Exhibits are admissible pursuant to FRE 1006 for trial.

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The hearsay rule's exceptions include the business records exception. See Fed. R. Evid. 803(6). That exception permits the admission of records that were "made at or near the time by — or from information transmitted by — someone with

knowledge," "kept in the course of a regularly conducted activity of a business" where "making the record was a regular practice of that activity." Id.

PPAS argues that the PPAS Agency Fee Invoices Spreadsheet, the Patriarch Partners, LLC Spreadsheet, and the Bankruptcy Court Chart are independently admissible as business records. However, by PPAS's own admission, "the exhibits at issue were put to paper outside of PPAS's normal business process." (PPAS Lit. Ex. Opp. at 18.) FRE 803(6) requires that the record itself, not simply the underlying data, be "kept in the course of a regularly conducted activity of a business." Fed. R. Evid. 803(6). Because the spreadsheets at issue here were not produced as part of PPAS's "normal business process," they are not admissible as business records pursuant to FRE 803(6).

Accordingly, the Trust's First Motion is **GRANTED IN PART** to the extent that the PPAS Agency Fee Invoices Spreadsheet, the Patriarch Partners, LLC Spreadsheet, and the Bankruptcy Court Chart are inadmissible as hearsay and **RESERVED FOR TRIAL IN PART** to the extent that the Court will reserve for trial its ruling on whether the Litigation Exhibits are admissible pursuant to FRE 1006.

F. THE TRUST'S SECOND MOTION: EXCLUDING UNDISCLOSED DAMAGE EVIDENCE AND CALCULATIONS

The Trust seeks to exclude certain damages evidence because PPAS violated Federal Rule of Civil Procedure ("FRCP") 26(a) ("Rule 26(a)") by failing to provide a damages computation during discovery. The Trust argues that PPAS did not provide a damages computation until February 24, 2026, well after discovery closed in June 2023. On February 24, 2026, PPAS produced a summary exhibit (the "Damages Summary Exhibit," Dkt. No. 397, at PX-534, 535), pursuant to FRE 1006, calculating PPAS's damages and providing citations to the underlying documents. Specifically, the Trust seeks the following: (1) to hold PPAS to the $1.83 million in unpaid agency fees it identified in response to Interrogatory 24; (2) to exclude evidence of wind-down costs; and (3) to exclude the introduction of the Damages Summary Exhibit, both because PPAS violated FRCP 26(a) and because the exhibit does not meet the requirements of FRE 1006. PPAS argues that it complied with Rule 26(a) by producing all the underlying damages evidence during discovery and by identifying agency fees and wind-downs as the two categories of damages, which only require addition to calculate. Additionally, it argues that the Damages Summary Exhibit is properly admissible as a summary exhibit pursuant to FRE 1006.

Rule 26(a)(1)(A)(iii) requires that a party provide "a computation of each category of damages claimed by the

13

disclosing party — who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]" Fed. R. Civ. Pro. 26(a)(1)(A)(iii). "The courts have concluded that, to fulfill the initial disclosure requirement, a party must provide a computation supported by documents." 6 Moore's Federal Practice - Civil § 26.22 (2026). "Mere production of undifferentiated financial documents without explanation is not sufficient to fulfill the mandatory initial disclosure requirement." Id. "Damages computations and the documents supporting those computations are two different things, and Rule 26(a) obliges parties to disclose and update the former as well as the latter." Agence France Presse v. Morel, 293 F.R.D. 682, 685 (S.D.N.Y. 2013).

PPAS did not provide a damages computation prior to the close of discovery and thereby violated Rule 26(a). PPAS did not provide a computation when it estimated its damages to be at least $10 million. (See Dkt. No. 381, Ex. 4 at 8.) In response to Interrogatory 6, on February 17, 2017, PPAS stated that a request for more information on damages was "premature." (Id., Ex. 6 at 10-11.) In response to Interrogatory 11 on October 20, 2017, PPAS provided lost

agency fees and unreimbursed wind-downs as damages categories but did not provide a computation. (See id., Ex. 8 at 6-7.) On May 19, 2023, in response to Interrogatory 16, PPAS asserted that it was seeking between $13 million and $15 million in damages but again did not provide a computation. (See id., Ex. 10 at 6-7.) On June 30, 2023, fact discovery closed. (See Dkt. No. 292 at 2.) On July 31, 2023, in response to Interrogatories 19 and 20 seeking to identify the specific unpaid agencies and unreimbursed winddown costs respectively, PPAS again objected to the interrogatories as "premature" because PPAS expected damages computations to be the subject of expert discovery. (See Dkt. No. 381, Ex. 11 at 6-7.) On September 29, 2023, in response to Interrogatory 24, PPAS identified unpaid invoices for 14 companies, totaling approximately $1.83 million. (See id., Ex. 13 at 6-12.) In addition to these interrogatories, the Trust also deposed Tilton and Carlos Mercado, Patriarch's controller, regarding damages, though neither provided a damages computation. (See id., Ex. 14 and 15.)

Accordingly, PPAS violated Rule 26(a) by failing to provide a damages computation during discovery. While PPAS did identify wind-down costs and agency fees as damages categories, provided estimates of its damages for each category, and provided PPAS the underlying evidence for these

damages, PPAS did not calculate the total damages for the unreimbursed wind-downs or unpaid agency fees or identify supporting documents until February 24, 2026, when it produced the Damages Summary Exhibit pursuant to FRE 1006. That exhibit represents the first time PPAS computed its damages and provided citations to supporting documents.

PPAS's arguments that it did not violate FRCP 26(a) are unavailing. First, PPAS argues that it did not violate FRCP 26(a) because the Trust knew PPAS's damages theories and PPAS produced all the underlying documents that support its damages claims during discovery. This argument fails because FRCP 26(a) requires the party claiming damages to voluntarily provide a damages computation. See Design Strategy, Inc. v. Davis, 469 F.3d 284, 295 (2d Cir. 2006). "Simply providing documents" and a damages theory alone is not sufficient, as the burden is on the party claiming damages to conduct the computation. Id. at 293; see also Agence France Presse, 293 F.R.D. at 684 ("[E]ven a party's own production of documents supporting its theory of damages cannot excuse that party from its separate obligation to disclose a damages computation[.]"). Second, PPAS argues that its damages claim of lost agency fees and unwinding costs only require simple addition. However, a computation's purported simplicity does not relieve the party claiming damages from its burden to

16

provide such a computation. See Design Strategy, 469 F.3d at 293 (finding FRCP 26(a) violation where the party argued "argued that it was not obligated to provide a calculation of damages because the calculation of damages from these records would be 'simple arithmetic[.]'"). Finally, PPAS's argument that the Trust never filed a motion to compel to cure PPAS's discovery failures is unconvincing because the Trust was not required to compel PPAS to provide a damages computation. See Fed. R. Civ. P. 26(a)(1)(E) (stating that FRCP 26(a) disclosures are self-executing); see also 6 Moore's Federal Practice - Civil § 26.131 (2026) ("The duty to supplement and correct disclosures and responses is a continuing duty and no motion to compel further supplementation is required.").

Since PPAS has violated Rule 26(a) in its failure to produce a timely damages computation, the next step is for the Court to consider what sanctions, if any, are appropriate under FRCP 37 ("Rule 37"). "Pursuant to Rule 37(c)(1), if a party fails to provide Rule 26(a) or (e) information, the party generally is not permitted to use that information at trial unless the failure was substantially justified or is harmless." Agence France Presse, 293 F.R.D. at 685. Courts have "broad discretion" to determine the nature of any sanction that should be imposed under Rule 37, "based on all the facts of the case." AAIpharma Inc. v. Kremers Urban Dev.

17

Co., No. 02-CV-9628, 2006 WL 3096026, at *5 (S.D.N.Y. Oct. 31, 2006). "Before granting the extreme sanction of preclusion, the Court should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." Cates v. Trs. of Columbia Univ. in City of New York, 330 F.R.D. 369, 373 (S.D.N.Y. 2019). "In determining whether preclusion or another sanction would be appropriate, courts should consider: '(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of . . . the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'" Id. (quoting Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)).

Here the Court finds that PPAS's violation of FRCP 26 does not warrant the exclusion of PPAS's damages evidence. First, PPAS disclosed the types of damages it is seeking and provided the underlying damages evidence. While the Court finds those disclosures insufficient under Rule 26(a), they did provide the Trust with notice as to the types of claims it was pursuing as well as the underlying evidence and the names of witnesses to examine these claims. PPAS's actions differ from the flagrant non-disclosures of damages that

courts typically sanction with preclusion. See Design Strategy 469 F.3d at 293 (precluding damages computation where plaintiff concealed its primary damages theory); Agence France Press, 293 F.R.D. at 684-88 (precluding the introduction of a new damages computation where the party disclosed a new theory of damages for the first time during the pretrial exchange of information).

Second, the damages evidence the Trust seeks to exclude represents a substantial share of PPAS's damages case. Exclusion of that evidence would deprive PPAS of the opportunity to seek over $5 million in damages. See Cates 330 F.R.D. at 374 (finding a motion to preclude not appropriate where "the Plaintiff class would be deprived of the opportunity to recover over $70 million in damages").

Third, while the Trust did suffer prejudice as a result of the late damages disclosure, this prejudice is not so great that exclusion would be appropriate. As previously stated, the Trust knew the categories of damages, knew the estimated amounts of damages, and had access to all the underlying documents. Furthermore, by the Trust's own admission, the calculation of damages based on these documents are "not complex." (Trust's Damages Mem. of Law at 5.) PPAS also identified witnesses who had information regarding the damages, and the Trust was able to depose them regarding

19

damages. While PPAS should have provided the damages computation and identified the specific underlying documents in a timely manner, the Trust was not "sandbagged" by PPAS's damages claims.

Fourth, the possibility of a continuance here weighs in favor of the Trust, as the trial is scheduled to begin on March 16, 2026, making the reopening of discovery at this late stage impractical. See Lebada v. New York City Dep't of Educ., No. 14-CV-758, 2016 WL 626059, at *7 (S.D.N.Y. Feb. 8, 2016), objections overruled, No. 14-CV-0758, 2016 WL 8453417 (S.D.N.Y. May 16, 2016) ("Case law has recognized that where a party has had ample time to disclose [the pertinent information] and provides no explanation for its failure to do so, a continuance is not warranted." (internal citations and alterations omitted))

While the lack of explanation, and the potential for some prejudice to the Trust, and the impracticality of a continuance do weigh in the Trust's favor, ultimately the importance of this damages evidence to PPAS outweighs these considerations. Because the Trust knew the types of damages at issue and had the evidence underlying these damages, and the calculation of these damages was straightforward, the preclusion of significant damages evidence is too "drastic." Cates, 330 F.R.D. at 373.

Separate from the FRCP 26(a) violation, the Trust also argues that the Summary Damages Exhibit is not admissible under FRE 1006 because some of the underlying source documents are not admissible. The Court will reserve its ruling on the admissibility of this exhibit pursuant to FRE 1006 at trial until after hearing the foundation that has been laid.

Accordingly, while the Court **DENIES** this motion in part to the extent that the Trust seeks to exclude damages evidence of wind-downs and to hold PPAS to presenting evidence and testimony of $1.83 million in agency fee damages, it reserves judgment until trial as to the admissibility of the Summary Damages Exhibit under FRE 1006.

## G.    ORDER

For the reasons explained above, it is hereby

**ORDRED** that the motion *in limine* of Plaintiff Patriarch Partners Agency Services, LLC ("PPAS") is **GRANTED** in part and **DENIED** in part.

**ORDERED** that regarding the exclusion of Elizabeth LaPuma's ("LaPuma's") anticipated testimony, the Court **GRANTS** this motion in part to the extent that LaPuma will not be allowed to testify as to matters for which she invoked the attorney-client privileged and did not provide factual testimony during her deposition but **DENIES** LaPuma's motion in

21

part to the extent that the Court will allow LaPuma to testify to the underlying facts she discussed in her deposition.

**ORDERED** that regarding the exclusion of David Dunn's ("Dunn's") anticipated testimony, the Court **GRANTS** this motion in part, only to the extent that Dunn is prohibited from testifying based on topics outside of his personal knowledge, including his specialized knowledge of wind-downs. The Court **DENIES** in part to the extent that Dunn is allowed to testify as to the topics he has personal knowledge of, including to the extent that he has personal knowledge of the Trust's damages.

**ORDERED** that regarding the "scheme" allegations, the Court **DENIES** this motion.

**ORDERED** that regarding the Books and Records Action, the Court **GRANTS** the motion.

**ORDRED** that Dunn's motion *in limine* as Trustee for the Zohar Litigation Trust-A (the "Trust") regarding Litigation Exhibits is **GRANTED** in part and **RESERVED FOR TRIAL** in part. The Court **RESERVES FOR TRIAL** in part, to the extent that the Court will rule on the admissibility of PX-527, PX-278, PX-528, and PX-500 pursuant to Federal Rule of Evidence 1006 at trial. The Court **GRANTS** this motion in part to the extent that PX-278, PX-528, and PX-500 are not independently admissible as business records.

**ORDRED** that Dunn's motion *in limine* as Trustee for the Zohar Litigation Trust-A (the "Trust") regarding undisclosed damages is **DENIED** in part to the extent that the exclusion of wind-down and agency fee damages evidence is denied and **RESERVED FOR TRIAL** in part regarding the admissibility of PX-534 and PX-535 pursuant to Federal Rule of Evidence 1006.

**SO ORDERED.**

Dated:    11 March 2026
          New York, New York

                                    Victor Marrero
                                    U.S.D.J.